**ESTATE OF James U. THOMPSON, Deceased; Susan T. Taylor, Personal Representative, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 88–3981.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1988.

Decided Jan. 3, 1989.

Donald Hayden Kelley (Kelley, Scritsmier, Moore & Byrne, P.C., North Platte, Neb., on brief), for petitioners-appellants.

David English Carmack, Washington, D.C. (William S. Rose, Jr., Charlotte, N.C., Gary R. Allen, John J. Boyle, Tax Div., Dept. of Justice, Washington, D.C., on brief), for respondent-appellee.

Before HALL, PHILLIPS, and WILKINSON, Circuit Judges.

K.K. HALL, Circuit Judge.

The estate of James U. Thompson ("decedent"), by its personal representative, Susan T. Taylor, daughter of the decedent, appeals the United States Tax Court's decision holding family farming property ineligible for the special use valuation provided by section 2032A of the Internal Revenue Code of 1954, 26 U.S.C. § 2032A. The Tax Court sustained the Internal Revenue Service's ("IRS") determination of a deficiency in federal estate taxes in the amount of $500,267. Because the denial of the special use valuation to decedent's estate is not mandated by statute itself and would frustrate the intent of Congress, we must reverse.

## I.

The facts in this appeal are not in dispute. The decedent died testate on May 8, 1982. At his death, he owned four farms in Dorchester County, Maryland. In his

will, decedent devised these farms to a trust which was to administer them as an ongoing farming operation. Susan Taylor, decedent's daughter, was named trustee. The net income from the trust was to be annually distributed as follows: 30% each for decedent's daughters, Taylor and Helen Nicholas; the lesser of 2% or $2,000 to Marie Brittingham, an individual unrelated to decedent, until her death, remarriage, or cohabitation with a member of the opposite sex; and 2% to the trust advisory committee which was created to help the trustee run the operation. The remaining net income was to be held in reserve, as the trustee determined, for prudent reinvestment into the operation. The unexpended balance was to be divided equally between decedent's daughters.

The trust was to extend until the death of the last survivor among the daughters and Brittingham. Upon termination, the property was to be divided equally between the two daughters' estates. The daughters were each provided a testamentary power of appointment for the benefit of their children or tax exempt charitable organizations.

On February 6, 1983, both daughters executed partial disclaimers renouncing their power to appoint their shares "to other than the issue of the decedent ... or such persons as shall constitute 'qualified heirs' under ... I.R.C. § 2032A." The next day, Brittingham executed a disclaimer renouncing her interest in the trust. In return, the daughters paid her $18,000, the actuarial value of her interest.

The estate filed a timely tax return, reporting the gross estate's value at $2,713,591, and calculating a net estate tax of $822,000. The estate elected to take the special use valuation of I.R.C. § 2032A (which provides for below fair market price valuation of real property used in family farms and businesses) on two of the farms, which reduced their fair market value from $1,027,007 to $327,307. Rejecting this election, on January 15, 1986, IRS issued a

statutory notice of deficiency in the amount of $509,957. The next day, the estate filed an amended return that did not claim the special use valuation, but did reduce the fair market value of the four farms.

On April 14, 1986, the estate petitioned the Tax Court to redetermine its deficiency. The court ruled that for any interest in qualified real property to be eligible for an I.R.C. § 2032A special use valuation, all interest in that real property must pass to qualified heirs. The court went on to conclude that the trust interest which passed to Brittingham, a non-qualified heir, was a property interest and as such, disqualified all of the property from the valuation. The court also ruled that Brittingham's disclaimer was not effective for federal estate tax purposes and thus, did not save the farmland's eligibility for the valuation. The Tax Court set plaintiffs' deficiency at $500,267.[1] This appeal followed.

## II.

Appellant contends that Brittingham's limited interest in the trust should not disqualify the farmland from the valuation of I.R.C. § 2032A. It argues that her interest was merely an income interest, not a property interest, and as such, does not preclude the special use valuation. Appellant also contends that even if Brittingham's interest were a property interest, it would not prevent the estate from taking the valuation on the balance of the property that passed to qualified heirs. Alternately, appellant maintains that it is entitled to the I.R.C. § 2032A valuation because Brittingham has effectively disclaimed her interest. The estate also contends that the daughters' power of appointment to non-qualified heir, tax-exempt charities should not, automatically, disqualify the property from the special use valuation. Rather, appellant urges that we adopt a wait-and-see approach that would levy a recapture tax if the farmland is devised to a non-qualified heir or put to a non-qualified use within ten years of the decedent's death. Again, the

---

1. The Tax Court also determined the fair market value of the properties. That decision is not challenged in this appeal.

estate maintains that any potential problem posed by this power of appointment has been obviated by the daughters' waiver of any right to appoint to non-qualified heirs.

In deciding this appeal, we find it necessary to address only two of these issues: (1) whether real property is eligible for the valuation of I.R.C. § 2032A when all the concurrent interests devised by a decedent in that real property do not pass to qualified heirs, and (2) whether real property is eligible for the valuation of I.R.C. § 2032A when not all of the successive interests in that property are in the hands of qualified heirs. Because we find in the affirmative on both of these issues, we need not reach the rest of appellant's contentions. We begin our analysis with a brief review of the special use valuation of I.R.C. § 2032A.

### III.

■ As a general rule, an estate, in calculating its estate tax, must include all real property of the decedent, valued at its fair market value. I.R.C. §§ 2031(a), 2033 (26 U.S.C.). A property's fair market value is defined by the Treasury Regulations as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having knowledge of relevant facts." 26 C.F.R. 20.2031–1(b). A consequence of this rule is that for estate tax purposes, property is generally valued at its "highest and best" use (*i.e.* the use at which it can bring the highest selling price), regardless of its actual use. H.R.Rep. No. 94–1380, 94th Cong., 2d Sess. at 5, 1976 U.S.Code Cong. & Admin.News pp. 2897, 2899. Another consequence of this rule is the dilemma in which it can place the heirs of family businesses and farms:

the estate tax can impose acute problems when the principal asset of the estate is equity in a farm or small business. Because assets are valued at their "highest and best use" rather than on the specific use to which the assets are being put and because these assets are illiquid, family members have been forced to sell farms

and small businesses in order to pay the estate tax.

*Id.*

In 1976, Congress acted to ameliorate this problem and preserve these family institutions when it enacted I.R.C. § 2032A. Without dwelling on the particulars, the provision allows these family businesses to be valued at their current operating value rather than their highest and best use. *Estate of Mangels v. United States*, 828 F.2d 1324, 1326 (8th Cir.1987); *Estate of Cowser v. Commissioner*, 736 F.2d 1168, 1170 (7th Cir.1984). Often, as in this case, this special use valuation results in a significant tax savings, a savings that Congress hoped could make the difference between a family business continuing or going under.

In order to narrowly tailor this relief measure, Congress took several precautions to ensure that only qualified properties could receive its benefits. For an estate to be eligible for I.R.C. § 2032A valuation:

(1) the decedent must have been a citizen or resident of the United States;

(2) the property must be located in the United States;

(3) the property must have been used at the time of the decedent's death as a farm or in a trade or business by the decedent;

(4) there must be "material participation" in the farm or in the business by the decedent, or a member of the decedent's family; and

(5) the property must pass to a qualified heir, who must be a member of the decedent's family.

*Whalen v. United States*, 826 F.2d 668, 669 (7th Cir.1987).

In this case, IRS conceded that the first four of these criteria had been met, but strenuously contested the fifth. Because, under the statute "qualified real property" is only property which passes to "qualified heirs," I.R.C. § 2032A(b)(1), it asserted, and the Tax Court agreed, that the small trust interest which passed to Brittingham, a non-qualified heir, disqualifies all of the

property from the valuation.[2] The conclusion that all persons with an interest in the property must be "qualified heirs" for any interest in that property to be "qualified property" is mandated because, according to IRS, I.R.C. § 2032A is a "special relief" provision that must be strictly construed to preserve the integrity of the Treasury. *See, Estate of Cowser, supra,* 736 F.2d at 1168 (narrowly interpreting the term "qualified heir"). Appellant disputes this conclusion, contending that the language of the statute, as well as the intent of Congress, does not impose this all-or-nothing requirement. We start our analysis of what is "qualified real property" where we properly should, the language of the statute itself.

I.R.C. § 2032A(b)(1) defines qualified real property to mean:

real property located in the United States which was acquired from or passed from the decedent to a qualified heir[3] of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, but only if—

(A) 50 percent or more of the adjusted value of the gross estate consists of

the adjusted value of real or personal property which—

(i) on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, and

(ii) was acquired from or passed from the decedent to a qualified heir of the decedent.

It is clear that the only limitations on what constitutes "qualified real property" imposed by the plain language of the statute is that it comprise 50% of the adjusted value of the gross estate, that it be put to a qualified use, and that it pass to a "qualified heir." In this case, IRS concedes the first two of these requirements and that all of the property in question passed to qualified heirs except for Brittingham's interest. Thus, it would appear that under a strict construction of the statute, the estate could properly elect to take the special use valuation on 98% of the value of the property.[4] However, we recognize that the language of this statute does not expressly address the question of concurrent interests, and that as the agency charged with enforcing the Internal Revenue Code, IRS's interpretation must be given due deference. *Chevron USA v. Natural Resources Defense*

---

**2.** Congress clearly intends that for estate tax purposes, qualified property be treated the same regardless of the legal form in which it is inherited:

The Act directs the Treasury Department to prescribe regulations setting forth the application of the special use valuation rules ... to situations involving otherwise qualifying real property held in a partnership, corporation, or trust which, with respect to the decedent, is an interest in a closely held business. Trust property shall be deemed to have passed from the decedent to a qualified heir to the extent that the qualified heir has a present interest in that trust property.

General Explanation of the Tax Reform Act of 1976 (H.R. 10612, 94th Cong., Public Law: 94–455) 539.

**3.** The statute painstakingly defines who is a "qualified heir:"

(1) **Qualified heir.**—The term "qualified heir" means, with respect to any property, a member of the decedent's family who acquired such property (or to whom such property passed) from the decedent. If a qualified heir disposes of any interest in qualified real property to any member of his family, such

member shall thereafter be treated as the qualified heir with respect to such interest.

(2) **Member of family.**—The term "member of the family" means, with respect to any individual, only—

(A) an ancestor of such individual,

(B) the spouse of such individual,

(C) a lineal descendent of such individual, of such individual's spouse, or of a parent of such individual, or

(D) the spouse of any lineal descendant described in subparagraph (C).

For purposes of the preceding sentence, a legally adopted child of an individual shall be treated as the child of such individual by blood.

I.R.C. § 2032A(e).

**4.** IRS's contrary view seems to be premised on the idea that "real property" as used in this statute means a 100% fee interest in that property. One need look no further than Black's Law Dictionary to demonstrate that other non-fee interests in land are recognized as "real property." *Id.* at 1095–96 (5th Ed.1979); *see also Estate of Pullin v. Commissioner,* 84 T.C. 789 (1985) (tenancy in common recognized as qualified real property under the I.R.C. § 2032A).

*Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Red Lion Broadcasting Co. v. F.C.C.,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). Therefore, we turn to the legislative history to search for support for IRS's position.

As noted above, I.R.C. § 2032A was enacted by Congress to facilitate the transition of family business from generation to generation.

> Your committee believes that, when land is actually used for farming purposes or in other closely held businesses (both before and after the decedent's death), it is inappropriate to value the land on the basis of its potential "highest and best use" especially since it is desirable to encourage the continued use of property for farming and other small business purposes.... In some cases, the greater estate tax burden makes continuation of farming, or the closely held business activities, not feasible because the income potential from these activities is insufficient to service extended tax payments or loans obtained to pay the tax. Thus, the heirs may be forced to sell the land for development purposes. Also, where the valuation of land reflects speculation to such a degree that the price of the land does not bear a reasonable relationship to its earning capacity, your committee believes it unreasonable to require that this "speculative value" be included in an estate with respect to land devoted to farming or closely held businesses.

H.Rept. No. 94–1380 (1976).

The congressional intent is clear, the federal estate tax should not be the ruin of legitimate family businesses. This intent could have not been made more clear than it was by Senator Dixon when he introduced a 1984 amendment to I.R.C. § 2032A:

> The law and the report [the 1976 House Ways and Means Committee Report] both state the public policy issue directly and forcefully. Congress wants to continue the family farm and small family-owned enterprises. Congress does not want the death of the owner of a family farm or a small family-operated business to force the sale of that farm or business if the family wants to stay in farming or the small business. The idea was to not permit the Federal estate tax to destroy farms or small businesses.
>
> There seem to be people at the IRS, however, who are not interested in preserving family farms and small businesses, and who want to use the slightest technicality to prevent an estate from being valued under the provisions of section 2032A.

130 Cong.Rec. S4318 (1984).[5]

This legislative history certainly does not support an overly-restrictive interpretation of the statute.[6] In the words of another court:

---

5. Senator Dixon's remarks were in regard to a change in the statute which liberalized the technical requirements for making the election to take the valuation. However, the spirit of the remarks apply with equal force in this context.

6. IRS vigorously disputes the conclusion that congressional intent supports granting the special use valuation in this case. It cites a passage from the legislative history of an amendment to the election notice provision of the statute:

> The conferees are aware that the current use valuation provision requires that, when successive interests or concurrent interests are created in specially valued property, all parties with an interest in the qualified property must be qualified heirs and all such parties must enter into the agreement to the election, regardless of the relative values of their interests. The de minimis rule estab-

lished in this provision is intended to apply solely as a guideline in determining whether perfection of an agreement is to be permitted. The guideline is not intended to give rise to an inference that parties having an interest in specially valued property which has a relatively small value are *not required to enter into* the agreement or that such persons need not be qualified heirs.

H.R.Conf.Rep. No. 98–861, 98th Cong., 2d Sess. at 1241 n. 1, 1984 U.S.Code Cong. & Admin. News pp. 697, 1929.

IRS fails to recognize that this language was modified by the General Explanation of the Deficit Reduction Act of 1984, Staff of Joint Comm. on Taxation, 98th Cong., 2d Sess. at 1124 n. 23, to apply to only *successive interests.* Thus, this passage is no longer of any help to IRS.

When Congress clearly demonstrates an intent to preserve an institution, such as the family farm and family owned businesses, a common sense approach should be applied, and the technical inadequacies of the statute should be subservient to the overriding Congressional intent. *Estate of David Davis IV v. Commissioner of Internal Revenue*, 86 T.C. 1156 (1986).

Where congressional intent is plainly evident, we must reject an administrative agency's statutory interpretation that is contrary to that intent. *Chevron USA, supra*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781–82 n. 9. Here, Congress has declared that this statute be given a common sense interpretation, one with an eye towards protecting the family farm and business. Consequently, we will not, as the IRS has done, read into the statute's definition of "qualified real property" the extra requirement that all of the concurrent interests in a given parcel must pass to only qualified heirs. Rather, the plain language of the statute requires, and the legislative history makes clear, that as long as an interest in real property meets all of the requirements of I.R.C. § 2032A, and is subsequently passed to a "qualified heir," it is eligible for the special use valuation regardless if other minor interests in the property are passed to and held by non-qualified heirs.[7] This straightforward interpretation of the statute has been tacitly approved by at least one other circuit.

In *Whalen, supra* the decedent left her farm to her three sons and her stepdaughter. In determining that the stepdaughter was not a qualified heir under the statute, the court examined the requirement that real property must pass to qualified heirs before it is qualified for the valuation. It noted that the congressional intent behind this requirement was to ensure that property which passed to *non-qualified* heirs not have benefit of the valuation. *Id.* at 670. The *Whalen* court did not specifically address the issue directly, but while disallowing the valuation as to the 25% interest which passed to the non-qualified heir, it allowed the valuation on the 75% interest which passed to the qualified heirs. *Id.* at 669. Inherent in the *Whalen* court's holding is the recognition that the result we expressly state here is fully compatible with the statute itself and fully consistent with the purposes of the Act, to protect small family farms and businesses from the estate tax.

Likewise, in Rev.Ruling 85–73, IRS itself has previously reached this result in the corporate context. As discussed there, D exchanged farmland for 80 shares of stock (80% ownership) in a newly-formed corporation, X. A, a qualified heir, and B, a non-qualified heir, each contributed cash in exchange for 10 shares (10% ownership) of X. After D's death, his executor had the corporation redeem 10 shares of D's stock. Consequently, both A's and B's percentage ownership was increased from 10% (10 shares of 100) to 11.1% (10 shares of 90). D's will left his remaining 70 shares to A.

In applying § 2032A, the IRS did not preclude the estate from taking the valuation on the interest which passed to A just because part of D's interest passed to X and B. Rather, it disallowed the valuation as to that portion of D's interest which, through the redemption, increased the percentage ownership represented by A and B's 10 shares, while allowing the valuation on the 70 shares which passed directly to A. This, of course, is exactly what we hold here. The IRS attempts to distinguish *Rev.Rul.*, 85–73 from the present case on the grounds that B had an interest in the property before D's death while Brittingham did not. In other words, IRS suggests that an inherited additional interest in property is somehow different than inherited original interest in property. We find this distinction specious. There is simply no principled difference between these two situations. Both result in a non-qualified and a qualified heir receiving concurrent present interests in property as a result of

---

7. Appellant's argument that Brittingham's 2% interest was not a property interest is plainly meritless. Clearly, her interest was a property interest which was obviously disqualified.

a decedent's death.[8]

■ Consequently, it is clear that a principled analysis of the statute's language, its legislative history, and its derivative case law all lead to the conclusion that the estate is eligible to elect the special use valuation on the 98% interest in the farms which passed to the decedent's daughters.[9] We therefore conclude that the Tax Court erred in denying the exemption to the Thompson Estate because of the fractional interest which passed to Brittingham.

## IV.

■ Because the Tax Court held that Brittingham's interest in the trust precluded the estate from electing the special use valuation, it did not reach the issues surrounding the power of appointment vested in the qualified heirs. IRS urges that because of this, this Court should not reach these issues and should remand to the Tax Court. Because the record is fully developed, and because these issues are central to a full disposition of this appeal, we decline to remand. Furthermore, we agree with appellant that the power does not preclude the estate from electing the valuation.

The power of appointment vested in decedent's daughters was as follows:

> my daughters ..., may appoint by their will among those of my issue, or any religious, charitable, scientific, literary, or educational corporation qualifying as such for the purposes of the federal estate tax.

IRS has embodied in Treas.Reg. § 20.2032A–8(a)(2) its position that all successive interests in real property must pass to qualified heirs for that property to be eligible for the special use valuation. 26 C.F.R. § 20.2032A–8(a)(2). This Court adopts the position of the Tax Court as expressed in *Estate of Clinard v. Commissioner,* 86 T.C. 1180 (1986), that as applied in this case, this regulation is invalid.

In *Clinard,* decedent created several trusts for her children and grandchildren. As in this case, the grandchildren were given a power of appointment to non-qualified heirs, specifically to anyone other than their estate or their creditors. In rejecting IRS's position that all successive interests in real property must be vested in qualified heirs for the property to be qualified for the valuation, the court noted that Congress had specifically provided a recapture mechanism in the statute. *Id.* at 1185–86. Under I.R.C. § 2032A(c), (d), each qualified heir must sign an agreement that he will be personally liable for a recapture tax which is imposed if the property is put to a non-qualified use, or if the heir's interest passes to a non-qualified heir, within 10 years of the decedent's death. With this provision, Congress set a 10–year limit in its attempt to ensure that only legitimate, continuing family operations receive the benefits of this provision. This was because it recognized that it is unfair to indefinitely encumber the qualified property and its owners with the obligation to continue in the family enterprise. *See* H.Rept. No. 94–1380 (1976). This Congressional willingness to allow for the eventual non-qualified disposition of the property, while still providing for the valuation, is even more evident when it is considered that in 1984, Congress lowered this recapture limit from 15 years to the present 10 years. *Id.* at 1186 n. 15.

---

**8.** Although of limited precedential value, *see Rowan Companies, Inc. v. United States,* 452 U.S. 247, 261 n. 17, 101 S.Ct. 2288, 2296–97 n. 17, 68 L.Ed.2d 814 (1981), IRS applied I.R.C. § 2032A in a similar fashion in Private Ruling 8223017. There, a non-qualified heir and qualified heirs indirectly purchased interests in qualified real property from decedent's estate. Again, IRS granted special use valuation on the interests which passed to the qualified heirs.

**9.** We reject IRS's argument that allowing the valuation in this case will lead to larger and

larger interests in family operations being left outside the family and inevitably result in the erosion of the family-owned nature of these businesses which Congress sought to protect. Our answer to this argument is simple, Congress has established several stringent criteria that real property must meet to qualify for this valuation. It is not for us, or for IRS, to supplement those criteria. Also, there is no incentive for the taxpayer to convey such larger interests. If he does so, he just loses the benefit of the valuation for larger portions of his property.

It is irrational to believe that Congress would grant this special use valuation to property which could be disposed of in any manner in ten years, yet deny the valuation to this property, which must be held by decedent's daughters for their entire lives, simply because it may be left to non-qualified heirs at their deaths.[10] *Clinard.* Common sense compels the conclusion that otherwise qualified real property remains eligible for the valuation even when the qualified heirs have the power to appoint their interest to non-qualified heirs. *Accord, Laverne Smoot, Executor v. United States,* 88-1 U.S.T.C. ¶ 13,748 (C.D.Ill. 1988) [1987 WL 49387]. Clearly, Congress intended that the special use valuation be available as long as the property remains in the hands of the qualified heirs. *Id.* Thus, IRS must wait and see if these heirs dispose of this property, through their power of appointment or otherwise, within the 10-year limit established by the recapture provision. If they do, that is when IRS may seek its recapture tax.

## V.

In sum, IRS's position in this case strikes this Court as unreasonably restrictive in view of the language of I.R.C. § 2032A and the strong congressional intent behind the provision. We wholeheartedly agree with IRS that where statutes grant relief from taxation they must be narrowly construed. *Cowser, supra,* 736 F.2d at 1171-72. However, tax relief is a means whereby Congress sacrifices federal tax revenues to encourage a given type of behavior. In this instance, I.R.C. § 2032A represents a legislatively struck balance between generating tax revenue and fostering family farms and businesses. To protect the treasury, Congress established stringent criteria to ensure that only worthy family enterprises received the benefits of this provision. It

is not for this Court, or IRS, to tinker with this balance. *Id.* Through its overly restrictive interpretations, IRS has attempted to tip this balance in favor of enhancing revenue, to the detriment of this estate. Consequently, we must even the scales, consonant with the language of I.R.C. § 2032A and the intent of Congress. Therefore, we find the estate eligible for special use valuation for the 98% interest in the qualified real property which passed to the decedent's daughters. Accordingly, the decision of the Tax Court is reversed.

REVERSED.

WILKINSON, Circuit Judge, dissenting:

As to the general purposes of I.R.C. § 2032A, I have no quarrel with the majority. Congress clearly intended that the family farm not be encumbered by a federal estate tax calculated on the farm property's fair market value. The question here, however, is what method of valuation Congress intended when the family farm no longer retains its family character. The majority would apply favorable tax treatment under § 2032A even when a part of the family farm is left in the form of a beneficial or income interest to non-family members.

I disagree. I do so, however, with an appreciation for the fact that this case is an appealing one: the decedent's two daughters each received a thirty percent interest in the farming operation, while the non-qualified heir, Mary Brittingham, was limited to the lesser of two percent, or $2,000. Because I fear that a *de minimis* exception here will mature into a principle quite at odds with the congressional purpose of limiting special use valuation to farms and businesses which remain within the family, I respectfully dissent.[1]

---

**10.** In regard to the legislative history cited at note 6 *supra,* we believe it is properly limited to mean that all qualified heirs, who take specially valued real property regardless of the nature of their interest in the property, must sign the recapture agreement. To construe it more broadly leads to this absurd result which we will not countenance. *See Mangels, supra,* 828 F.2d at 1329 (plain meaning of statute is inappli-

cable where it yields absurd results and a reasonable alternative interpretation is available).

**1.** I agree with the majority that Mary Brittingham's two percent share in the profits of the farm is a statutory interest. 26 C.F.R. 20.-2032A-8(c)(2). Because Mary Brittingham received $18,000 in payment for this interest, she rendered her disclaimer ineffective for purposes

I.

Real property is generally valued for estate tax purposes on the basis of its fair market value at the time of death. Section 2032A of the Internal Revenue Code provides an exception to the usual method of inheritance valuation. Qualifying property under this section is valued according to its actual use rather than its ideal fair market use, a valuation that generally results in substantial tax savings. The statute establishes a clear rule to define when this exception should apply. If "qualified real property," the family farm or closely held business, is "passed from the decedent to a qualified heir of the decedent," it is entitled to special use valuation. I.R.C. § 2032A. The obvious corollary is that if qualified use property is left to unqualified heirs it does not qualify for special use valuation.

The purpose of special use valuation is to permit family farms to continue in operation from one generation to the next. Without special valuation provisions, Congress feared family farms would have to be sold simply to pay off the federal estate tax. *Mangels v. U.S.*, 828 F.2d 1324, 1326 (8th Cir.1987). Congress did not intend, however, that protective provisions for family farms extend to the devise of income interests in the farm to non-family members or institutions. In particular, Congress made no provision which would allow income from the family farm to be bequeathed, in part, to non-qualified heirs, while still allowing special use valuation for the property.

Surely this omission was not one of oversight. The statute here is highly articulated. It carefully defines the character of qualifying property both before and after the decedent's death. The statute also delimits with precision the categories of qualifying heirs. 26 U.S.C. § 2032A(e)(1) & (2). Had Congress wished to provide special use valuation for property from which the profits had been proportionally devised to non-family members or institutions, it could have done so. Instead, it limited favorable

tax treatment to real property "passed from the decedent to a qualified heir of the decedent," 26 U.S.C. § 2032A(b)(1); a qualified heir being defined in turn as "a member of the decedent's family...." 26 U.S. C. § 2032A(e)(1). The reason for this limitation was apparent. As non-family income interests in the farming property are created, the operation takes on less the character of a family farm and more the flavor of an agricultural consortium.

Certainly, under Treasury Regulation 26 C.F.R. § 20.2032A–8(a)(2), qualified heirs may choose to elect special use valuation for only a portion of the qualified property, creating the option of selling a portion of the farm for financial reasons. However, with special use valuation afforded now to property in which a non-qualifying heir retains an income interest, the majority converts a congressional purpose to protect true family farms into a more general tax preference for real property devised for agricultural purposes.

The majority would address this problem by holding that only proportional interests in farm income passing to qualified heirs will receive special use valuation. In so doing, the majority has effectively amended the statute. Congress was quite capable of addressing problems of proportionality when it chose to do so. In fact, Congress created just such a pro rata provision when it adopted the recapture tax, yet it felt no need to amend the special use valuation to allow similar flexibility. 26 U.S.C. § 2032A(c)(1). Under the provisions of the recapture tax, if the heir disposes of any interest in qualified property for which special use valuation was elected or if he ceases to use such property for a qualified use within ten years of the decedent's death, the estate tax savings accrued from the election of the special use valuation is recaptured. The heir is personally liable for any tax recaptured on his interest in the property. If the heir sells a portion of the qualified property, the recapture is pro rata. The amount to be recaptured is de-

---

of the federal estate tax. Under 26 U.S.C. § 2518(b)(3) a disclaimer is effective only if the person making the disclaimer has not accepted

the interest or any of its benefits. *See also* 26 C.F.R. § 25.2518–2(e).

termined by first calculating the tax savings attributable to the special use valuation. This savings is allocated to the individual interests in proportion to their respective reductions in value resulting from the special use valuation. § 2032A(c)(2).

Similarly, Congress provided in 26 U.S.C. § 2032A(b)(1)(A) that fifty percent or more of the value of the gross estate had to consist of property which at the time of decedent's death was for a qualified use. Further, Congress provided that twenty-five percent or more of the value of the qualifying property had to be owned and materially operated by the decedent or a member of the family.

The meticulous provision for proportionality in these particulars of the statute makes more glaring the absence of any provision for proportional devises to non-qualifying heirs. The majority's analysis, however, has imputed to Congress an intent to permit, for example, a forty percent income interest in a family farm to be left to non-family members or institutions without risk to special valuation for the remainder. Indeed, the majority would not even require that the forty percent be used for farming purposes since the threat of a later recapture tax is only directed at that portion of the property which initially received the special use valuation. I regret how far astray from the congressional purpose of keeping family farms intact the majority's analysis has led us.

The legislative history supports this construction of § 2032A's requirements. Congress, in the Deficit Reduction Act of 1984, while relaxing the requirements for perfecting an election of special use valuation, specifically stated that all parties with an interest in specially valued property are still required to be qualified heirs.

The conferees are aware that the current use valuation provision requires that, when successive interests or concurrent interests are created in specially valued property, all parties with any interest in the property must be qualified heirs and all such parties must enter into the agreement to the election, regardless of the relative value of their interests. The de minimis rule established in this provision is intended to apply solely as a guideline in determining whether perfection of an agreement is to be permitted. *The guideline is not intended to give rise to an inference that parties having an interest in specially valued property which has a relatively small value are not required to enter into the agreement or that such persons need not be qualified heirs.*

H.R.Conf.Rep. No. 98–861, 98th Cong. 2d Sess. at 1241 n. 1, *reprinted in* 1984 U.S. Code Cong. & Ad.News 1445, 1929. (emphasis added).

The majority argues that because the first sentence was modified to exclude the words "concurrent interest," the passage no longer applies. However, the modification of the first sentence does not affect the last, which specifically states that even those with a relatively small interest in specially valued property must be qualified heirs. If it had been the intent of the conferees to exclude concurrent interests from the requirement that all persons must be qualified heirs, the conferees would surely have limited the last sentence to those with successive interests. Instead, the deletion of the phrase "concurrent interests" from the first sentence was done for the sake of clarity. This section concerned a recapture tax; therefore successive interests were the most directly affected. Finally, Congress was quite clear that even those with a small interest must sign the recapture agreement and be qualified heirs.

When Congress has chosen to expand the availability of special use valuation, it has chosen to vary the forms of inheritance which are eligible for the exception, *not* the requirement that all heirs must be qualified. In allowing property passing to a discretionary trust to be specially valued, Congress specifically stated that all potential beneficiaries must be qualified heirs. The House Conference Report states that property meeting the other requirements for current use valuation can be specially valued if it passes to a discretionary trust in which no beneficiary has a

present interest ... because of the discretion in the trustee to determine the amount to be received by any individual beneficiary *so long as all potential beneficiaries of the trust are qualified heirs.*

H.R.Con.Rep. No. 97–215, 97th Cong., 1st Sess. at 252, *reprinted in* 1981 U.S.Code Cong. & Ad.News 285, 341. (emphasis added). The import of this language is evident. The relaxation of requirements for specially valued property held in trust was accompanied by a reaffirmation of the requirement that those with interest in that property must be qualified heirs. Here Brittingham was not a qualified heir, and the devise runs afoul of the special valuation statute.

## II.

The majority would avoid these problems of statutory construction by implying what is, in effect, a limited *de minimis* exception to the statute, conferred because Mary Brittingham had received only a two percent income interest in the property. Thus the majority states that the property "is eligible for the special use valuation regardless if other minor interests in the property are passed to and held by non-qualified heirs." The majority does not define what is meant by a minor interest. Its reference to *Whalen v. United States,* 826 F.2d 668 (7th Cir.1987), would imply that, at the very least, the majority would classify a twenty-five percent interest as minor. This implied *de minimis* exception is an open invitation for courts to decide these cases, not on the basis of the statutory requirements, but on their own views of the equities.[2]

The statutory rule is a straightforward one: property does not qualify for special use valuation when income interests in that property pass from the decedent to non-

qualified heirs. In reaching its result, the majority contravenes not only the language but the customary canons of statutory construction. No deference is accorded the administrative interpretation of the statute. *See Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Nor has this statute, as a special relief measure, been strictly construed. *Israel–British Bank (London), Ltd. v. Fed. Dep. Ins. Corp.,* 536 F.2d 509, 513 (2nd Cir.1976). Little consideration is given to the fact that the field of estate planning and estate taxation depends upon clear and settled rules, not upon *de minimis* exceptions which require further litigation for definition. The canons of construction are, of course, not ends in themselves, but aids in determining the intent of Congress. Because I believe the majority has erred on this basic score, I respectfully dissent and would affirm the judgment of the Tax Court.

---

2. *Whalen* did not address the issue here. The *Whalen* case concerned whether the denial, by the IRS, of special use valuation to a stepchild of the decedent was correct. The answer to this question required the *Whalen* court to determine whether, before the 1978 amendment to the statute which added the specific requirement concerning qualified heirs, Congress intended that only qualified heirs should receive the special use valuation. As the majority notes, the court in *Whalen* was not faced with the question of whether or not the statute intended that all heirs be qualified; therefore it is not surprising that the *Whalen* court did not reach the issue in the instant case.