**Laverne SMOOT, as Executor of the Estate of Ruth M. Smoot, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

**No. 88–2058.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1988.

Decided Dec. 27, 1989.

598

David J. Duez, McDermott, Will & Emery, Chicago, Ill., Robert M. Bellatti, Bellatti & Barton, Springfield, Ill., for plaintiff-appellee.

Linda A. Mosakowski, Gary R. Allen, William S. Rose, Jr., Asst. Atty. Gen., Seth G. Heald, David E. Carmack, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., Frances C. Hulin, Asst. U.S. Atty., Office of the U.S. Atty., Danville, Ill., for defendant-appellant.

Before WOOD, Jr. and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

For purposes of determining federal estate tax, the Internal Revenue Code allows farms to be valued according to use as farms, rather than at their fair market value, so long as the farm passes to a "qualified heir of the decedent," that is, a member of the decedent's family and, in certain circumstances, a member of the qualified heir's family. 26 U.S.C. § 2032A (1979).[1] In order to confine this tax benefit to cases where farm use and family ownership continue for a period of years, § 2032A(c)(1) imposes an additional estate tax (sometimes called a "recapture tax") if, within fifteen years (later changed to ten) and "before the death of the qualified heir," the "qualified heir" disposes of an interest other than to a member of his or her family, or ceases to use the property as a farm.

In this case, an executor elected special use valuation, but the Internal Revenue Service, relying on a Treasury Regulation interpreting the statute, rejected the election. The estate paid the additional tax assessed, and filed suit in district court seeking a refund. The district court held the Treasury Regulation unreasonable in light of Congressional intent, and ordered the IRS to refund $46,638.28, including interest. The IRS appeals.[2]

## I. BACKGROUND

The decedent, Ruth M. Smoot, died on November 19, 1980. She was survived by her husband, Laverne Smoot, who was then sixty-seven years old, and by three sons and four grandchildren. At the time she died, Mrs. Smoot owned interests in four tracts of farmland located in Vermilion County, Illinois. Mrs. Smoot devised her real estate to Mr. Smoot during his life, with power to appoint by his will to anyone except himself, his estate, or his creditors. If Mr. Smoot does not exercise his power, the remainder will be divided among Mrs.

1. A "family member" is defined as an individual's ancestor or lineal descendant or certain collateral relatives. 26 U.S.C. § 2032A(e). See footnote 7, below. Special use valuation is also available for certain closely-held business properties. Both the relevant statute and regulation have been amended. We apply the law as it stood at the time of the decedent's death.

2. The district court had jurisdiction under 28 U.S.C. § 1346(a)(1), and our jurisdiction comes under 28 U.S.C. § 1291.

Smoot's then surviving children and descendants of any deceased children. If no descendant of hers survives Mr. Smoot, one half will be distributed among Mr. Smoot's heirs and one half among hers, the heirs being determined as of that time. Thus, it is possible that Mr. Smoot could die within fifteen years of Mrs. Smoot's death, having exercised his power of appointment in favor of persons who were not members of the family of either Mr. or Mrs. Smoot.

Mr. Smoot, as executor, claimed a special use valuation for the farmland on the estate's tax return. The IRS disallowed special use valuation because Mrs. Smoot's will, as written, left two possibilities that the farmland would pass out of her family members' hands within fifteen years of her death. This could happen if Mr. Smoot dies within fifteen years and (1) exercises his testamentary power in favor of a nonfamily member, or (2) does not exercise the power and none of Mrs. Smoot's descendants survive Mr. Smoot, since the remainder interest will pass under the will to persons who might not be qualified heirs (family members) under § 2032A(e) (1979). The IRS argued that special use valuation was not available because both possibilities violated a Treasury Regulation requiring that where the decedent had created successive interests, all such interests must be received by qualified heirs. 20 C.F.R. § 20.2032A–8(a)(2).

The district court first held that because the probability was so minuscule that, within fifteen years of Mrs. Smoot's death, part of the farmland would pass to non-qualified heirs by way of the will's default clause,[3] it was not a reasonable basis for denying special use valuation. The IRS does not challenge this ruling on appeal.

The IRS also defended its denial of special use valuation based on the portion of Treasury Regulation § 20.2032A–8(a)(2) which says that remainder interests of qualified heirs which are subject to divest-

ment in favor of non-qualified heirs are not treated as being received by qualified heirs. Since the remainder interests left to Mrs. Smoot's descendants are subject to divestment by Mr. Smoot's power of appointment, the farmland does not meet the regulation's requirement that *all* successive interests be received by "qualified heirs." The IRS argued that because Mr. Smoot might appoint a non-qualified heir within fifteen years of Mrs. Smoot's death, the regulation reasonably advanced the purposes of § 2032A by denying special use elections when such a possibility exists.

The district court decided that Congress intended a "wait and see" approach to the situation presented by Mrs. Smoot's will, instead of denying the special use valuation based on a contingency:

> Given the legislative history indicating a Congressional intent to aid family operated farms and the specific inclusion of a recapture provision, the court believes that Congress intended that special use valuation be allowed as long as the property of the deceased remains in the hands of a qualified heir. Only when the property passes to a nonqualified heir should the IRS exercise its power granted under the recapture agreement in order to collect the additional tax from a qualified heir.

*Laverne Smoot, Executor v. United States*, 88–1 U.S.T.C. ¶ 13,748, 1987 WL 49387 (C.D.Ill.1987). The IRS challenges this decision.

## II. DISCUSSION

Congress enacted § 2032A as part of the Tax Reform Act of 1976 as a means to provide "substantial relief" from federal estate taxes for "modest-sized estates, farms and other closely held businesses," taxes which could threaten these family-based institutions' very existence. H.R. Rep. No. 1380, 94th Cong., 2d Sess. at 3, 1976 U.S.Code Cong. & Admin.News at 3357 ("1976 Ways and Means Report").[4]

---

3. The parties stipulated that the probability, as of Mrs. Smoot's death, that none of her descendants would survive Mr. Smoot to reach age twenty-five was .000,000,000,530 percent. The odds that Mr. Smoot will choose not to exercise

his testamentary power (and thus allow the default clause to operate) are, of course, indeterminable.

4. See also S. Rep. 938 (Part II), 94th Cong., 2d Sess. at 15, 1976 U.S.Code Cong. & Admin.News

[T]he estate tax can impose acute problems when the principal asset of the estate is equity in a farm or small business. Because assets are valued at their "highest and best use" rather than on the specific use to which the assets are being put and because these assets are illiquid, family members have been forced to sell farms and small businesses in order to pay the estate tax.

1976 Ways and Means Report at 5, 1976 U.S.Code Cong. & Admin.News at 3359. Congress also recognized that because the fair market value of property represents its "highest and best" use, such valuation often reflects pressure on prices from land speculation "to such a degree that the price of the land does not bear a reasonable relationship to its earning capacity." *Id.* at 22, 1976 U.S.Code Cong. & Admin.News at 3376. By permitting farms and other family businesses to be valued according to their present use, often much lower than their "fair market value," Congress "intended to preserve the family farm and other family businesses, two very important American institutions, both economically and culturally." *Id.* at 5, 1976 U.S. Code Cong. & Admin.News at 3359.[5]

However, Congress realized that such a provision could also act to give an unintended windfall to devisees of specially valued property who later either quit the qualifying use or sell the property at its true market value. 1976 Ways and Means Report at 22, 1976 U.S.Code Cong. & Admin. News at 3376; 1976 Finance Report at 15, 1976 U.S.Code Cong. & Admin.News at 4041. Therefore, § 2032A included a provision enabling the IRS to recapture (in effect) the amount of tax avoided by electing the special use valuation (or, if less, the difference in property value) if, within fifteen years (now ten), the qualified heir disposes of the property to someone not a family member, or ceases the qualifying use. § 2032A(c) (1979). To elect the special use valuation, the executor must file an agreement signed by each person who has an interest in the property, consenting to the application of the recapture provision. § 2032A(d)(2).

The statute sets several conditions to be met before property qualifies for the special use valuation; the one at issue here is the requirement that the property be "acquired from or passed from the decedent to a qualified heir of the decedent." § 2032A(b)(1). Unfortunately, the phrasing of the statute suggests only the simple case where property passes from a decedent to one qualified heir in fee, and if that qualified heir continues to own and use it as a farm until his death, the election can be made again in his estate if the farm passes to a qualified heir. The legislative history clearly tells us, however, that Congress intended special use valuation to be available in an estate where concurrent or successive interests pass to two or more qualified heirs:

[I]f the decedent leaves qualified real property for which special use valuation was elected to two or more qualified heirs with successive interests in the property, potential liability for the recapture tax is not diminished and none of the property is to be released from potential liability for the recapture tax until the death of the last of the qualified heirs (or, if earlier, upon the expiration of 15 years from the date of the death of the decedent).

1976 Ways and Means Report at 26, 1976 U.S.Code Cong. & Admin.News at 3380; 1976 Joint Committee Explanation at 542, 1976–3 Cum.Bull. (Vol. 2) at 554. See *Estate of Clinard v. Commissioner*, 86 T.C. 1180, 1184–84 (1986).

Treasury Regulation § 20.2032A–8 was adopted to flesh out how § 2032A would apply to property passing in concurrent interests (such as tenants in common and joint tenants) or successive interests (such

at 4041 ("1976 Finance Report"); H.R.Rep. No. 1515, 94th Cong., 2d Sess. at 607, 1976 U.S.Code Cong. & Admin.News at 4246.

**5.** See also Staff of the Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, 94th Cong., 2d Sess. at 536–37, (Comm. Print 1976), 1976–3 Cum. Bull. (Vol. 2) at 548–49 ("1976 Joint Committee Explanation").

as life estates and remainders). Subsection (a)(2) requires that all successive interests must be held by qualified heirs for a property to qualify for special use valuation.[6] Additionally, the regulation states that

> [w]here successive interests in specially valued property are created, remainder interests are treated as being received by qualified heirs only if (i) a qualified heir receives a present interest in that real property, (ii) all preceding interests in the property are vested absolutely in qualified heirs, and (iii) such remainder interests are not contingent upon surviving an alternate taker who is not a member of the decedent's family or are not vested subject to divestment in favor of a nonfamily member.

All relevant holders of interests in Mrs. Smoot's farmland are qualified heirs under the terms of the statute.[7] Regulation § 20.2032A–8(a)(2), however, would prevent Mr. Smoot, as executor, from electing special use valuation because the remainder interests created by Mrs. Smoot's will are held "subject to divestment in favor of a nonfamily member," on account of Mr. Smoot's power of appointment. Although the Regulation treats two or more qualified heirs holding interests in unbroken succession as "a qualified heir" under the statute, it does not so treat them if there is a possibility that the succession could, though it may not, be interrupted in favor of a person who is not a qualified heir.

Application of § 2032A–8(a)(2) in this case runs contrary to Congress' general intent to provide family farms "substantial relief" from the burden of estate taxes. As we noted in *Whalen v. United States,*

"[t]he intent of Congress was to provide special use valuation only for property which remained in the hands of the decedent's family and which was being used for a qualified use both before and after the decedent's death." 826 F.2d 668, 670 (7th Cir.1987) (quoting S.Rep. No. 745, 95th Cong., 2d Sess. at 82 (1978)); *accord,* H.R. Rep. No. 700, 95th Cong., 1st Sess. at 69 (1977). In this case, the farmland *has* remained in the family since Mrs. Smoot's death, and *has* continued to be farmed. Unless Mr. Smoot exercises his testamentary power in favor of a nonfamily member, the will ensures the farm will remain in the family after his death. The district court accepted Mr. Smoot's statement that he does not intend to appoint the land to a nonfamily member, and moreover, according to the record there is a 35% probability that he will have no chance to do so within fifteen years of Mrs. Smoot's death, even if he wanted to. The power of appointment creates only a possibility that a disqualifying transfer would happen, while denying the special valuation creates the certainty of a heavy burden on the farm: the farm's fair market value at the time of Mrs. Smoot's death was $682,000—$452,000 more than its special value as a working farm. Denying the special use valuation has saddled the Smoot family with an additional $42,000 in estate taxes.

Rules which produce undesirable results in specific cases may nevertheless be sensible in general; we are obliged to review Treasury regulations with deference. Only those failing to "implement the congressional mandate in some reasonable

---

**6.** As noted, the district court decided (and the IRS no longer disputes in this case) that this requirement violates the purpose of § 2032A when used to deny special use valuation to properties passing by a will which creates future interests in non-qualified heirs with only extremely remote possibilities of becoming present interests. See also *Estate of Davis v. Commissioner,* 86 T.C. 1156 (1986).

**7.** In 1980, § 2032A(e) provided:

(1) **Qualified heir.**—The term "qualified heir" means, with respect to any property, a member of the decedent's family who acquired such property (or to whom such property passed) from the decedent. If a qualified heir disposes of any interest in qualified real property to any member of his [or her] family, such member shall thereafter be treated as the qualified heir with respect to such interest. (2) **Member of family.**—The term "member of the family" means, with re[s]pect to any individual, only such individual's ancestor or lineal descendant, a lineal descendant of a grandparent of such individual, the spouse of such individual, or the spouse of any such descendant. For purposes of the preceding sentence, a legally adopted child of an individual shall be treated as a child of such individual by blood.

manner" are invalid. *Rowan Cos. v. United States,* 452 U.S. 247, 252, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981) (quoting *United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 449–50, 19 L.Ed.2d 537 (1967). When judging a regulation's validity under the statute it is intended to implement, a court must "find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *Commissioner v. Engle,* 464 U.S. 206, 217, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984) (quoting *NLRB v. Lion Oil Co.,* 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957) (opinion of Frankfurter, J.). Thus, while we usually defer to a Treasury regulation which is not directly at odds with express language in the Internal Revenue Code, a regulation may be invalid if it is out of harmony with the spirit or purpose of the provision it purports to implement. See, *e.g., Goodson–Todman Enterprises, Ltd. v. Commissioner,* 784 F.2d 66, 74 (2d Cir.1986); *Estate of Gresham v. Commissioner,* 752 F.2d 518, 521 (10th Cir. 1985); *Lutheran Social Service of Minn. v. United States,* 758 F.2d 1283, 1289 (8th Cir.1985); *Estate of Lovett v. United States,* 621 F.2d 1130, 1135, 224 Ct.Cl. 32 (1980).

■ This regulation has recently been held invalid by a Court of Appeals in a case involving a similar possibility of divestment by power of appointment. *Estate of Thompson v. Commissioner,* 864 F.2d 1128 (4th Cir.1989). Accord, *Estate of Clinard v. Commissioner,* 86 T.C. at 1188–90. In *Estate of Thompson,* a decedent left a family farm in trust to his two daughters for life (except for a 2% interest given to a non-family member), with the remainders to go to their estates. Each was given a testamentary power of appointment which could be exercised in favor of non-qualified heirs. The Commissioner denied the estate's election of special use valuation, and the Tax Court affirmed on the ground that the estate left a 2% concurrent interest to a non-qualified heir. A divided panel of the Fourth Circuit held that the 2% interest did not prevent the remaining 98% from receiving special use valuation, and went on to hold that neither did the existence of the daughters' powers of appointment. 864 F.2d at 1135–36. Citing the district court's decision in this case, the Fourth Circuit said:

> Common sense compels the conclusion that otherwise qualified real property remains eligible for the valuation even when the qualified heirs have the power to appoint their interest to non-qualified heirs.

864 F.2d at 1136. The system adopted by Congress permits the special use valuation when the estate tax is originally computed. This is so notwithstanding the possibility that the qualified heir may at any time convey to someone who is not a qualified heir, or may change the property's use to one which is not qualified. Congress chose a "wait and see" approach concerning the qualified heir's treatment of the property, satisfying itself that if such conveyance or change of use does occur within fifteen (now ten) years, the tax advantage could be recaptured.[8]

The qualified heir is always free to make a disqualifying transfer of his interest, or to quit the qualifying use, while the holder of a special testamentary power of appointment can only transfer the property at death. If Congress was satisfied to adopt a wait and see approach towards possible disqualification of the property by the qualified heir, we see no reason to assume that Congress intended to deny election of special use valuation outright to those estates subject to the possibility that an appointment power holder will make a transfer to someone not a family member. We agree with the Fourth Circuit that, given Congress' willingness to wait and see as to the possibility of a conveyance or change of use, it is irrational to believe Congress intended that the provision for a power of appointment in the present circumstances

---

**8.** If a fee owner who is a qualified heir dies within fifteen (now ten) years, there is no recapture of the tax advantage, except that the property must be valued at fair market value in *that* estate, if there is a disqualifying transfer at the owner's death.

would prevent the special use valuation without waiting to see whether and how it is exercised. See *Estate of Thompson*, 864 F.2d at 1136.

The core of the IRS's argument that its interpretation of § 2032A is reasonable lies in its narrow interpretation of the recapture provision, an argument not addressed by the Fourth Circuit in *Estate of Thompson*.[9] The IRS seems to concede that if the recapture provisions were applicable so that Mr. Smoot would be liable for the tax if he appoints the property to a person not a qualified heir, "the result here would not be objectionable, but would strictly accord with Congressional intent." Government Brief at 27. The IRS insists, however, that liability for the recapture tax would not arise in such a case, and so it is reasonable to deny election of special use valuation. Its argument rests upon a highly technical reading of two portions of the recapture provision, § 2032A(c). In both instances, however, we think the terms must be read so as to effectuate the intent of Congress.

Both of the IRS's concerns stem from the portions of the recapture provision we have italicized:

(1) **Imposition of additional estate tax.** —If, within 15 years after the decedent's death and *before the death of the qualified heir*—

(A) *the qualified heir disposes of* any interest in qualified real property (other than by a disposition to a member of his family) . . .

then, there is hereby imposed an additional estate tax.

2032A(c)(1) (1979). The IRS argues first, that since the exercise of a power of appointment is deemed to cause a transfer from the donor of the power rather than from the donee (citing federal tax statutes and Illinois cases), Mr. Smoot's exercise of his power of appointment would not be a "disposition" by the qualified heir, and liability for the recapture tax would not arise.[10] Such disposition is the triggering event specified in (1)(A). Second, the IRS points out that although the exercise of a testamentary power of appointment requires execution of a will before death, it does not take effect until death occurs. Thus the disposition would not be made "before the death" of the qualified heir. For that reason also, the IRS argues that recapture tax liability would not arise.

Without questioning the IRS's understanding of such concepts of property law, we believe it has allowed an unnecessarily technical construction of these terms to obscure the purpose of Congress' plan. We think courts should adopt a common sense approach to interpreting § 2032A, being sensitive to the overarching congressional concern with providing farms (and other small businesses) with estate tax re-

---

**9.** The IRS also briefly defends its regulation by claiming that Congress approved of Regulation § 2032A-8(a)(2) when it amended § 2032A in 1984, and quotes a footnote from a report by the staff of the House conference committee which considered § 2032A, apparently hoping that we will find the regulation validated by the "legislative reenactment" doctrine. Staff of the Joint Committee on Taxation, General Explanation of the Deficit Reduction Act of 1984, 98th Cong., 2d Sess. at 1124 n. 23 (Comm. Print 1984) (available on Lexis). See also H.R.Rep. No. 861, 98th Cong., 2d Sess. at 1241 n. 1, 1984 U.S.Code Cong. & Admin.News at 1929 n. 1; *Estate of Davis*, 86 T.C. at 1167 fn. 5, 1176. In 1984, however, Congress was addressing a different problem, and decided to allow perfection of incomplete agreements under § 2032A(d). The footnote refers to the requirement of the regulation that all parties with any interest must be qualified heirs and must enter into the agreement. It does not refer to the portion of the regulation critical in this case—that remainder interests are not "treated as being received by qualified heirs" if "subject to divestment in favor of a nonfamily member." The remarks of Senator Dixon, the sponsor of the 1984 amendment, hardly reflect legislative approval of the IRS's approach to § 2032A: "There seem to be people at the IRS . . . who are not interested in preserving family farms and small businesses, and who want to use the slightest technicality to prevent an estate from being valued under the provisions of section 2032A." 130 Cong.Rec. S 4318 (1984).

**10.** In the event of a disqualifying testamentary appointment, it seems clear that Mr. Smoot would not be liable with respect to his interest as a life tenant, since that interest disappears at the time of appointment, his death. Likewise, it would be illogical and unfair to hold the remainder interest holders liable because their interests never become present or vested—they are destroyed upon appointment.

lief. See *Estate of Thompson*, 864 F.2d at 1136; *Estate of Clinard*, 86 T.C. at 1190 (Hamblen, J., concurring). The terms employed permit a reading which effectuates the congressional purpose.

The concept that a transfer under a special power of appointment is a transfer from the decedent rather than the power holder—the "relation back" doctrine—is a legal fiction, a theory which "has never been consistently followed," subject to "fairly frequent and important departures in situations where the proprietary aspect of the power is most apparent." Restatement of Property, Introductory Note at 1812. There is no compelling reason to read the recapture provision consistent with this fiction. The recapture provision was written for the purpose of recovering the tax advantage gained from the special use valuation when the qualified heirs ceased unreasonably soon to deserve it. The power holder is the person who controls the disposition of the property, and a commonsense reading of § 2032A(c) recognizes that such an appointment is a "disposition" by the power holder which gives rise to recapture tax liability if made within fifteen (now ten) years to a person not a family member. Viewing holders of a power of appointment as having an interest in the property is consistent with the very Treasury Regulation under review in this case: Regulation § 20.2032A–8(c)(2) treats power holders as having an interest in qualified property, and requires them to enter into an agreement to the applicability of the recapture provision. This would make little sense if the donee of the power could not be held liable for the tax.

As the IRS notes, § 2032A(e)(9) provides that property shall be considered to have been "acquired from or to have passed from the decedent" if it is so considered under section 1014(b) (relating to basis of property acquired from a decedent). Section 1014(b) lists ten situations where property shall be considered to have been acquired from or to have passed from the decedent for the purpose of determining basis of the property in the hands of the person acquiring it—including property acquired through the exercise or non-exercise of a power of appointment. 26 U.S.C. § 1014(b) (1988). Apparently, under § 1014(a)(3), property valued in a decedent's estate under § 2032A would have that value as a basis in the hands of any appointee, whether or not the appointee were a qualified heir. We do not think that the reference to § 1014(b) in § 2032A(c) was meant to exclude treatment under § 2032A(c) of an exercise of a special power of appointment by a qualified heir as a disposition for the purpose of imposing a recapture tax. Aside from the concept that in exercising his power of appointment, Mr. Smoot would be causing the title to pass directly from Mrs. Smoot to Mr. Smoot's appointee, Mr. Smoot is in actual control of the disposition. If he does not exercise his power, exercises it in favor of a family member, or survives his wife by fifteen years, the conditions set by Congress for the special use valuation will be fulfilled. If we were to uphold the position of the IRS, a needless frustration of Congressional purpose would occur.

Nor does § 2032A(c)(1)'s requirement that the disqualifying disposition be made "before the death of the qualified heir" mean that the exercise of the testamentary power of appointment at, rather than before, the death of Mr. Smoot would not give rise to recapture liability. This "before the death" language shows Congress' willingness to forego recapture tax liability for a testamentary disposition to a nonfamily member by the qualified heir; only when the disqualifying event occurs before the qualified heir's death does recapture liability attach.

The recapture provision, like § 2032A generally, does not mention successive interests but consistently refers to "a" or "the" qualified heir, as if property is always devised to or inherited by one person in fee simple. However, the section's legislative history makes it clear that Congress contemplated the decedent's leaving property to two or more qualified heirs with successive interests, and that "none of the property is to be released from potential liability for the recapture tax until the death of the last of the qualified heirs,"

(subject to earlier expiration at the end of fifteen (now ten) years). See 1976 Ways and Means Report at 26, 1976 U.S.Code Cong. & Admin.News at 3380; 1976 Joint Committee Explanation at 542, 1976–3 Cum. Bull. (Vol. 2) at 554.

A willingness to read § 2032A(b)(1) broadly to promote Congress' purpose to provide estate tax relief calls for an equal willingness to read the recapture provision, § 2032A(c), in a way to protect this goal. It is therefore sensible, and sensitive to Congressional intent, to read the "before the death" requirement in § 2032A(c) to mean "before the death of the last qualified heir holding an interest," when successive interests are involved. In this case, the only possibility that Mr. Smoot's appointment will not be "before the death" of "the qualified heir" is that all Mrs. Smoot's descendants predecease him—the chances of which have been disregarded as minuscule.

## III. CONCLUSION

In summary, this controversy concerns two provisions of § 2032A, one involving the availability of special use valuation, the other the imposition of an additional tax upon certain disqualifying events. The first, § 2032A(b)(1), defines "qualified real property," and the critical terms are "real property ... which was acquired from or passed from the decedent to a qualified heir of the decedent." The second, § 2032A(c)(1), imposes the recapture tax, and the critical terms are "If, ... before the death of the qualified heir ... the qualified heir disposes of any interest...." We think these terms can and must be read broadly in order to effectuate Congress' remedial purpose.

In § 2032A(b)(1) the term "a qualified heir" must embrace two or more qualified heirs holding successive interests, even when one of them holds a power of appointment which he might exercise to dispose of the remainder to persons who are not qualified heirs. The "wait and see" approach adopted by Congress elsewhere in § 2032A applies here also.

In § 2032A(c), the term "the qualified heir," must again embrace two or more qualified heirs. Where there are successive interests, the "death of the qualified heir" must mean the death of the last qualified heir holding an interest; where a qualified heir is a donee of a power of appointment, this heir's exercise of the power "disposes" of the interest appointed. Exercising the power in favor of persons who are not qualified heirs would make the power holder liable for the recapture tax on the interests so appointed. See *Estate of Clinard,* 86 T.C. at 1188.

The judgment appealed from is AFFIRMED.