IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 91-4699

---

ESTATE OF MALCOLM McALPINE, JR., Deceased,
GERALDINE McALPINE, Independent
Executrix and JOCELYN McALPINE
GREEMAN, Independent Executrix,

Petitioners-Appellees,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellant.

---

Appeal from the Decision of the United States Tax Court

( August 4, 1992 )

Before HIGGINBOTHAM and DUHÉ, Circuit Judges, and HARMON, District Judge.[*]

HIGGINBOTHAM, Circuit Judge:

This case involves the special use valuation provision for family farms and businesses under the federal estate tax. The estate elected special use valuation for a qualified family ranch, but failed to obtain the signatures of trust beneficiaries who had an interest in the property. The Tax Court held that the estate nevertheless "substantially complied" with Treasury regulations governing the election of special use valuation, and was therefore

---

[*]District Judge of the Southern District of Texas, sitting by designation.

entitled to perfect its election under 26 U.S.C. § 2032A(d)(3).[1] We affirm.

I.

The federal government generally imposes estate taxes on real property according to its fair market value, as measured by its highest and best use. § 2031(a). Congress has created an exception to the rule, however, for family farms and businesses. The purpose of the exception is to grant relief to heirs of such properties who might otherwise find the financial burden imposed by the estate tax so great that it would be necessary to sell the farm or business to pay the tax. Estate of Thompson v. Commissioner, 864 F.2d 1128, 1133 (4th Cir. 1989); Mangels v. United States, 828 F.2d 1324, 1326 (8th Cir. 1987); H.R. Rep. No. 94-1380, 94th Cong., 2d Sess., 21-22 (1976). Under § 2032A, estates that include qualified real property may elect to value the property on the basis of its actual use instead of its most profitable use. The provision thus allows heirs of qualified farms and businesses to write down the property they inherit and escape higher taxation based on actual market values. There are strings attached, however. The heirs must continue to use the property as a family farm or business for at least ten years following the decedent's death to avoid recapture of part of the tax savings resulting from special use valuation. Section 2032A(c); Bartlett v. Commissioner, 937 F.2d 316, 320 (7th Cir. 1991).

_____

[1] All statutory references in this opinion are to the Internal Revenue Code, codified at chapter 26 of the U.S. Code.

2

Electing special use valuation under § 2032A is a fairly laborious process. The Secretary has prescribed regulations governing the substantive qualifications for special use valuation as well as the procedures for making an election. See 26 C.F.R. § 20.2032A-3 -- A-8 (1991). As a procedural matter, a qualified estate must attach to its estate tax return a notice of election including, inter alia, the decedent's name and taxpayer identification number, the relevant qualified use, the items of real property to be specially valued, the fair market value of this real property and its value based on the qualified use, the methods used in determining the special value based on qualified use, and the names, addresses and relationship to the decedent of each person taking an interest in specially valued property. 26 C.F.R. § 20.2032A-8(a)(3). The estate must also attach a recapture agreement expressing consent to personal liability for or collection of any additional estate tax which may later be imposed if the property is put to uses other than the qualified ones. See § 2032A(c); 26 C.F.R. § 20.2032A-8(c)(1); Prussner v. United States, 896 F.2d 218, 221 (7th Cir. 1990). The recapture agreement must be signed and executed by all parties in being who have any interest in the property designated in the agreement for special use valuation. § 2032A(d); 26 C.F.R. § 20.2032A-8(c)(1). An interest in the property is an interest which, as of the date of the decedent's death, can be asserted under applicable local law so as to affect the disposition of the specially valued property by the estate. 26 C.F.R. § 20.2032A-8(c)(2). Such persons as owners

3

of remainder and executory interests, joint tenants and holders of other undivided interests in the property, and trustees of trusts holding an interest in the property are specifically included among those who must sign and execute the recapture agreement. Id.

In 1984, Congress amended § 2032A to permit correction of certain defects in notices of election of special use valuation and the accompanying recapture agreements. The purpose of the amendment was to prevent the Commissioner from using slight technical defects in these documents to prevent otherwise qualified taxpayers from taking advantage of the special use valuation provided in the statute. McDonald v. Commissioner, 853 F.2d 1494, 1498 (8th Cir. 1988); 130 Cong. Rec. S4318 (1984). Section 2032A(d)(3) therefore provides that:

> The Secretary shall prescribe procedures which provide that in any case in which --
>     (A) the executor makes an election under paragraph (1) [the special use valuation election] within the time prescribed for filing such election, and
>     (B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but --
>         (i) the notice of election, as filed, does not contain all required information, or
>         (ii) signatures of 1 or more persons required to enter into the agreement described in paragraph (2) [the recapture agreement] are not included on the agreement as filed, or the agreement does not contain all required information,
> the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements.

"Substantial compliance" is not defined in the Code, and the Secretary has yet to prescribe procedures governing this matter. It is left to the courts to determine whether a taxpayer has

4

substantially complied with the applicable regulations such that perfection of an election is allowed.

Malcolm McAlpine left his interest in a family ranch to three discretionary spendthrift trusts for the benefit of his three grandchildren, ages 22, 20 and 9 at the time of his death. Their mother was designated trustee and was given the power to distribute income and corpus to the beneficiaries for their health, maintenance, support, and education as she saw fit. The trusts contained "spendthrift clauses" prohibiting the beneficiaries from transferring their interests in the trusts by assignment, sale, pledge, encumbrance or charge, and preventing the beneficiaries' share of trust income or principal from being subjected to or applied to the payment of their debts. The trusts were to terminate and all undistributed corpus was to be distributed to the beneficiaries when they reached age thirty-five. The trustee was to hold and manage the trust property with all the powers given to trustees under the Texas Trust Act.

On its estate tax return, McAlpine's estate elected to value the decedent's share of the family ranch according to the special use valuation provision of § 2032A.[2] It is undisputed that the ranch is qualified real property within the meaning of this statute. It is also undisputed that a properly documented and completed notice of election was timely filed along with the estate

---

[2] As a result of the election, the decedent's share of the ranch would be valued for estate tax purposes at $ 577,602.25, rather than at its fair market value of $ 1,327,602.25.

tax return. A recapture agreement was attached, signed by McAlpine's daughter as trustee of the three spendthrift trusts holding an interest in the property. The names and addresses of the three beneficiaries were listed on the agreement, as well as on the notice of election. The beneficiaries of the trusts did not sign the recapture agreement, however.

The Internal Revenue Service notified the estate that the recapture agreement was invalid because it had not been executed by the beneficiaries of the trusts. Within ninety days, the estate filed an amended notice of election and an amended recapture agreement signed by all the trust beneficiaries, except for the nine-year-old, whose signature was made by her mother as guardian ad litem. The Service nevertheless asserted that the election could not be perfected under § 2032A(d)(3) because substantial compliance with applicable regulations requiring all parties with an interest in the qualified property to execute the recapture agreement required the beneficiaries' signatures. It accordingly found a deficiency in the federal estate tax of $333,363.24. The estate petitioned for a redetermination in the Tax Court, which found the estate in substantial compliance despite the omission of the signatures. Perfection was therefore proper. The Commissioner appeals.

We agree with the Tax Court that McAlpine's estate was entitled to perfect its election of special use valuation under § 2032A(d)(3). By the statute's explicit terms, omitting required signatures from a recapture agreement is the kind of defect that

6

can be cured by the estate within ninety days of notification of the error. Here the trustee of the spendthrift trusts that inherited the qualified property signed the agreement, as explicitly required in 26 C.F.R. § 20.2032A-8(c)(2), but the beneficiaries of the trusts did not. As long as the estate "substantially complied" with the Secretary's regulations, the statute allows correction of the oversight.

As the Seventh Circuit has noted, the decisions of the Tax Court regarding the substantial compliance rule are not particularly enlightening. See Prussner, 896 F.2d at 224. Distinctions between "essential" requirements and "procedural or directory" requirements, see, e.g., Estate of Strickland v. Commissioner, 92 T.C. 16, 29 (1989), do not provide us with much guidance as to when the omission of signatures can be excused. Without attempting to announce a rule applicable in all cases, we think substantial compliance is achieved where the regulatory requirement at issue is unclear and a reasonable taxpayer acting in good faith and exercising due diligence nevertheless fails to meet it. See Prussner, 896 F.2d at 224-25 (substantial compliance doctrine applies where requirement is unclearly or confusingly stated). Congress did not intend that estates be denied special use valuation when despite their best efforts, they fail to achieve perfect compliance with regulations that are subject to conflicting interpretations.

The Tax Court's decision was based largely on the idea that the purposes of § 2032A(d)(3) would not be fulfilled by precluding

perfection here, where it is not plain in the regulations whether the signatures of the trust beneficiaries are in fact required.  We agree.  The beneficiaries are qualified heirs who have an interest in the property for the purposes of special use valuation, <u>see</u> § 2032A(e)&(g), but it is not entirely clear whether their signatures are required on the recapture agreement under § 2032A(d)(2).  The Secretary's regulations say that an interest in the property for the purposes of signing the recapture agreement "is an interest which, as of the date of the decedent's death, can be asserted under applicable local law so as to affect the disposition of the specially valued property by the estate."  26 C.F.R. § 20.2032A-8(c)(2).  Trustees are explicitly mentioned, but trust beneficiaries are not.

The beneficiaries of a trust have the ability to affect the disposition of the assets of the trust only insofar as they have the right to sue to force the trustee to fulfill its fiduciary obligations.  The signatures of trust beneficiaries are arguably required on this basis.  This result is hardly obvious from the plain language of the regulations, however.  Trustees are generally empowered to take such actions as are necessary or appropriate to carry out the purposes of the trust, including leasing or selling the trust property.  <u>See</u> <u>Restatement (Second) of Trusts</u> §§ 186-90 (1959).  Under the terms of the trust agreement in this case, the trustee has all powers given to trustees under Texas law, and may manage, handle, invest, reinvest, exchange, lease, dispose of, develop, operate, use, mortgage or pledge all or any part of the

8

property in the trust.  See McAlpine Will § (h); Tex. Prop. Code § 113.001-.024.  The trustee thus has the power to decide whether the trust should continue to put the property to a qualified use-- that is, whether it would remain a family operated ranch.  It is also significant that these were spendthrift trusts, so that the beneficiaries could not alienate their interests in the trusts by assigning, selling, or pledging them.  The trusts would not terminate until after the expiration of the ten year period during which the property was required to maintain its character as a family ranch to avoid recapture taxes.  In sum, although the beneficiaries are qualified heirs, they have little control over how the qualified property is used and could not transfer or dispose of their interests in the property within the relevant ten year period.  There is at least a good faith argument that the signature of the trustee was sufficient and the beneficiaries' signatures were not required.  Under these circumstances, we think Congress intended to allow the estate to perfect its election by supplying the beneficiaries' signatures within ninety days of notification that the Service considered them necessary.

The Commissioner urges that Congress was not so generous to estates that omit required signatures as the plain language of § 2032A(d)(3) might suggest.  He relies heavily on a passage in the legislative history of the provision which says that

> [t]o be eligible for perfection, the agreement as originally filed must at a minimum be valid under State law and must include the signatures of all parties having a present interest or a remainder interest other than an interest having a relatively small value.  The right to perfect agreements is intended to be limited to cases

9

> where, for example, a parent of a minor remainderman, rather than a guardian ad litem as required under State law, signs the agreement.
>
> H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 1241, reprinted in 1984 U.S.Code Cong. & Admin. News 1445, 1929.

The argument is that because the interests of the trust beneficiaries here cannot be characterized as being of "relatively small value," the omission of their signatures indicates that the recapture agreement is not eligible for perfection.

We concede that this passage lends some support to the Commissioner's position. But it is, after all, a statute that we are interpreting, not a conference report. See Prussner, 896 F.2d at 228. Had Congress intended to limit the addition of signatures to those of individuals who have only interests of a relatively small value, it could have said so in the statute. It did not. Furthermore, the example provided in the conference report does not jibe with the "small value" theory. A minor remainderman may have a large financial interest in qualified property. The failure to obtain the signature of a guardian ad litem on behalf of the minor is excused because it is a good faith error, not because the interest of the minor is of small value. See Cong. Rec. S4318 (daily ed. Apr. 11, 1984) (remarks of Senator Dixon). In fact, we think the error provided as an example of what may be excused is the same type of error that the Commissioner argues is inexcusable in this case--a reasonable misunderstanding as to who has the legal authority to sign on behalf of others in a fiduciary relationship. Because the conference report itself offers contradictory bases for

10

determining when an estate has substantially complied despite the omission of signatures, we accord it less weight.

The Commissioner also refers to the General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, 98th Cong., 2d Sess. (Jt. Committee Prt. 1984). This document indicates that perfection is proper only for "mistakes that were reasonable in light of the circumstances existing at the time the elections were made." Id. at 1123. As we have explained, we think the mistake by McAlpine's estate falls into this category, so this citation is of little help to the Commissioner. Other examples of curable signature mistakes are provided in this document--when the existence of an heir is unknown at the time the estate tax return is filed, and when a tenant-in-common with the decedent fails to sign the recapture agreement. Id. at 1124. The Commissioner does not explain why obtaining the signature of a trustee but omitting the signatures of the beneficiaries is different in kind from these others.

We recognize that the courts have on several occasions refused to allow estates to take advantage of § 2032A(d)(3) on the ground that the estate had not substantially complied with the applicable regulations. See, e.g., McDonald, 853 F.2d at 1498 (omission of signatures of all persons with an interest in the property is not substantial compliance); Prussner, 896 F.2d at 223-24 (failure to attach a recapture agreement at all is not substantial compliance), Strickland, 92 T.C. at 17 (failure to substantiate method used for determining special value based on qualified use is not substantial

11

compliance); Estate of Doherty v. Commissioner, 95 T.C. 446 (1990) (failure to obtain appraisal before filing return is not substantial compliance). We think this case is different. In the cases where courts have found that an error precluded a finding of substantial compliance, the taxpayers did not have reasonable, good faith arguments that the regulations did not require what was omitted. Furthermore, the degree to which the taxpayers satisfied the regulatory requirements was not as great in the other cases as it is here. McAlpine's estate supplied all the necessary information, and the trustee signed the recapture agreement, binding the trusts. The beneficiaries' names and addresses were included. The only thing missing was their signatures. There is no evidence of fraud or dilatory or slipshod preparation of the necessary documentation. We must give the statute a common sense interpretation, with an eye towards protecting the family farm and business as Congress intended. Estate of Thompson, 864 F.2d at 1134. On the facts of this case, it was not an unreasonable mistake for the estate to fail to obtain the signatures of the trust beneficiaries.

We do not think our holding jeopardizes the Commissioner's ability to recapture taxes when specially valued property is put to non-qualifying uses after an election.[3] The signing trustee

---

[3] Of course, the estate added the signatures of the beneficiaries in this case, so the government is fully protected. The Commissioner's argument is that allowing perfection in this situation will encourage others to omit the signatures of trust beneficiaries, reap the advantages of special use valuation, and then devote the property to non-qualifying uses without fear of recapture tax liability.

assumed personal liability for any recapture taxes later imposed. The government may therefore sue the trustee for recapture taxes if necessary. See Restatement (Second) of Trusts § 262 (1959). The government can also reach trust property directly by a proceeding in equity to the extent it has benefited the estate, or if the trustee is insolvent or absent. Id. §§ 268, 269. Furthermore, the act of filing an election under § 2032A gives the United States a lien on the qualified real property that continues until the recapture tax liability is satisfied or has become unenforceable through lapse of time. § 6324B. The recapture agreement is not a prerequisite to the lien. The Commissioner's fears that he will be unable to recapture taxes from trust beneficiaries whose failure to sign recapture agreements goes undetected seem groundless.

In sum, we are persuaded that McAlpine's estate was entitled to perfect its election of substantial use valuation under § 2032A(d)(3). In light of our conclusion, it is unnecessary to consider the applicability of § 1421.

AFFIRMED.