**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 94-40211

_____

ESTATE OF HARRY M. HUDGINS,
Deceased, LEE C. HUDGINS and
HARRY HUDGINS II, Co-Independent
Executors,

                              Petitioners-Appellees,

                    versus

COMMISSIONER OF INTERNAL REVENUE,

                              Respondent-Appellant.

_____

Appeal from the United States Tax Court

(No. 5506-91)

_____

(June 28, 1995)

Before JOLLY and WIENER, Circuit Judges.[*]

WIENER, Circuit Judge.

     In this federal estate tax case, implicating "special use valuation" of several tracts of farm or ranch property owned by Harry M. Hudgins (Decedent) at the time of his death, the

_____

     [*] Judge Irving L. Goldberg was a member of this panel when counsel presented arguments to the court, but he died before the opinion was written and circulated.  The case is therefore being decided by a quorum.  28 U.S.C. § 46(d).

Commissioner of Internal Revenue (Commissioner) appeals the adverse decision of the United States Tax Court (Tax Court). The Commissioner questions the Tax Court's holding that, when filing Decedent's federal estate tax return (706), the independent co-executors of Decedent's estate (Estate) "substantially complied" with the requirements of the Internal Revenue Code (Code) and applicable Treasury Regulations (Regs.) for electing a special use valuation of the Estate property, thereby entitling the Estate to perfect its election within ninety days following notice from the IRS that the Estate's election was defective. Concluding that the Tax Court's substantial compliance ruling was erroneous, we reverse and remand for further proceedings consistent with this opinion.

I

FACTS AND PROCEEDINGS

Decedent was a Texas rancher who died testate in 1987.[1] In his Last Will and Testament (the Will), Decedent left several tracts of ranch property to various combinations of five grandsons. The Will's SECTION 5., which applied to each legacy of ranch property that resulted in two or more of Decedent's grandsons becoming "joint owners," imposed several ten year restrictions on the legatees and the property thus bequeathed: (1) No such jointly owned tract could be mortgaged or partitioned; (2) any joint owner of an interest in one tract could sell his interest to another

---

[1] As Decedent died after December 31, 1981, the issue of special use valuation in his estate is governed by the provisions of the Economic Recovery Tax Act of 1981. Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, § 421(k)(3), 95 Stat. 172, 313 (1981).

joint owner of that tract but not to any other person; and (3) any joint owner could rent or lease his interest to another joint owner but not to any other person. [Neither SECTION 5. nor any other provision of the Will expressly required that the land actively be used for ranch purposes, expressly prohibited any other use of the property, expressly required the grandsons to participate in qualifying activities, or expressly imposed any penalties, such as reversion, revocation, forfeiture or other loss of ownership interests, in the event of an actual or attempted alienation in violation of the restriction.][2]

The Will appointed Decedent's son, Lee C. Hudgins, grandson, Harry Hudgins II, and long-time attorney and scrivener of the Will, Joe A. Keith, to serve as Independent Co-Executors (Executors). The Will specified that Mr. Keith's service as a co-executor would not preclude his being compensated "for also being attorney for my estate." Although not expressed in the Will, Mr. Hudgins apparently expected the Estate to retain Mr. Keith as its attorney, which it did.

Mr. Keith was an experienced attorney who had represented Mr. Hudgins for over forty years, had also represented other prominent ranching families in that part of North Texas, and had prepared and filed a number of federal estate tax returns, including some in

---

[2]SECTION 9. directed that in each business in which Decedent may be engaged at his death "whether in individual, partnership, corporate or other form, shall be discontinued and liquidated as soon as reasonably possible" following the death of Decedent. Neither the Tax Court nor any of the parties contend that the provisions of SECTION 9. affect the use of the subject property.

which special use valuation elections were made. The record reflects that Mr. Keith was incapacitated at the time this action was commenced in the Tax Court and has since died.

Mr. Keith prepared and timely filed the 706 for the Estate. In the portion of the 706 that asks if the estate intends to elect special use valuation on any of its property, the "Yes" box was checked. In compliance with instructions in the 706, the Estate completed and affixed a Schedule N, together with required attachments to that schedule. A "Notice of Election" was also attached to the 706, but it contained only nine of the fourteen items required by the instructions and the Regs. The Notice of Election contains a statement, presumably affixed by Mr. Keith, to the effect that "[i]t is considered that all requirements exist for special valuation of the qualified real property." Although the Notice of Election contains signature lines for all five grandsons, only three of the five had signed that instrument by the time it was filed with the 706. This is at least partially explained in a "Memorandum" typed at the bottom of the Notice of Election and signed by Mr. Keith, which states that one of the grandsons had not signed "because he is in military service" and that another had not signed because he was "not presently available." The Memorandum concludes with the following statement:

> "To remedy that situation, the undersigned preparer of this Form 706 will undertake to obtain the signatures of [the two grandsons who had not signed] on a counterpart hereof, which when available will be transmitted to the office of the Internal Revenue Service at Austin, Texas."

The record does not reflect that any steps were taken to effectuate

4

the promised "remedy" until after the IRS audited the 706 and notified the Estate that its special use valuation election was defective due to the incomplete Notice of Election and the failure to attach an executed Recapture Agreement.

Within ninety days after receiving that notice from the IRS, the Estate submitted all previously missing information, documentation, and signatures. The Commissioner nevertheless denied the special use valuation claimed by the Estate, contending that, as the Estate's initial election was not "in substantial compliance" with the requirements of the Regs., the Estate was precluded from perfecting its election post hoc. The Commissioner assessed the subject properties at their fair market values, thereby increasing the value of the gross estate by $487,790SQthe excess of the aggregate fair market value of the subject tracts over their aggregate special use valuations.[3] As a result of this adjustment the Commissioner issued a deficiency notice to the Estate for underpayment of taxes in the amount of $149,622.

The Estate petitioned the Tax Court for a redetermination of the deficiency. Following a trial on mostly stipulated facts, the Tax Court held that the Estate was indeed entitled to the special use valuation, thus there was no deficiency in estate taxes. The court's conclusion that the Estate was entitled to special use valuation was grounded in its determination that the Estate's initial election substantially complied with the election

---

[3] The parties stipulated at the redetermination hearing that the appropriate increase to the gross estate was $403,345, not $487,790.

5

requirements, entitling the Estate to perfect its election within the statutory period following notice of the defective election. This review followed the Commissioner's timely filing of a notice of appeal.

## II

## ANALYSIS

The Tax Court's holding for the Estate apparently served as a wake-up call for the Commissioner, for his brief to this court presents both a comprehensive explanation of the law applicable to special use valuation elections and an application of that legal framework to the pertinent facts. We therefore borrow extensively from the Commissioner's brief in the analysis that follows.

A.  Standard of Review

In reviewing decisions of the Tax Court we apply the same standards used in reviewing a decision of the district court: Questions of law are reviewed de novo; findings of fact are reviewed for clear error.[4] We will not find a ruling to be clearly erroneous unless we are left with the definite and firm conviction that a mistake has been made.[5]

In the instant case the discrete facts, as noted, are stipulated for the most part and otherwise are essentially undisputed. That the belated efforts of the Estate to perfect the

---

[4]  Park v. Commissioner, 25 F.3d 1289, 1291 (5th Cir. 1994) (citing McKnight v. Commissioner, 7 F.3d 447, 450 (5th Cir. 1993)), cert. denied, 115 S.Ct. 673 (1994).

[5]United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

election were substantively adequate is not disputed; thus the sole issue presented is whether the Estate's initial effort was sufficient to constitute "substantial compliance," thereby entitling the Estate to perfect its election within ninety days following notice from the IRS that the original election was defective.  Even though the parties assumed that this issue presented a factual question, i.e., whether the facts of the case constitute "substantial compliance"SQa term of art in Code § 2032A(d)(3)SQwe believe that, despite the fact that in other contexts issues of substantial compliance, like substantial completion, are indeed questions of fact, the question here presented is one of law.  Resolution of this fact/law dichotomy is not important in this appeal, however, as we conclude that, irrespective of whether we review the issue de novo or for clear error, the Tax Court erred reversibly in determining that the Estate's initial filing was in substantial compliance with the requirements for a valid special use election.

B.   Special Use Valuation

Generally, property subject to federal estate tax is returned at its fair market value.[6]  One limited exception to that generality is found in § 2032A of the Code, which provides an alternative, more "taxpayer friendly" method for valuing some family farms and closely held businesses.[7]  Courts have recognized

---

[6]  United States v. Cartwright, 411 U.S. 546, 550-51 (1973); Treas. Reg. § 20.2031-1(b).

[7]  See Tax Reform Act of 1976, Pub. L. No. 94-455, § 2003(a), 90 Stat. 1520, 1856 (1976); I.R.C. § 2032A.

that, in enacting § 2032A, Congress sought to provide relief to those who, when inheriting family farms, might otherwise be forced to sell them to pay estate taxes calculated on "highest and best use" values, which often exceed significantly the land's value for farming purposes.[8]  In the hope of avoiding such a result and helping to preserve family farms and other closely held businesses, Congress allows qualifying property to be returned for estate tax purposes at its actual (farm) use value rather than its fair market value based on its highest and best use.[9]  As permission to elect this so-called "special use valuation" constitutes an act of grace or a special dispensation by Congress, the courts have strictly construed § 2032A and its requirements.[10]

Briefly summarized, the conditions that must be met to qualify for special use valuation are:  The decedent must have been a citizen or resident of the United States at the time of his death; the property must be located in the United States; the value of the

---

[8]  See, e.g., McAlpine v. Commissioner, 968 F.2d 459, 460 (5th Cir. 1992) (noting that purpose of exception is to grant relief to heirs); Estate of Thompson v. Commissioner, 864 F.2d 1128, 1133 (4th Cir. 1989) (same); see H.R. Conf. Rep. No. 94-1380, 94th Cong., 2d Sess. 21-22 (1976).

[9]  McAlpine, 968 F.2d at 460.

[10]  See, e.g., Martin v. Commissioner, 783 F.2d 81, 83-84 (7th Cir. 1986) (construing strictly "qualified use" provision of § 2032A); Estate of Sherrod v. Commissioner, 774 F.2d 1057, 1062-67 (11th Cir. 1985) (construing strictly "material participation" and "qualified use" tests of § 2032A), cert. denied, 479 U.S. 814 (1986); Estate of Cowser v. Commissioner, 736 F.2d 1168, 1171 (7th Cir. 1984) (adhering to precise language of § 2032A defining "qualified heir"). Cf. Corn Products Ref. Co. v. Commissioner, 350 U.S. 46, 52 (1955) (construing narrowly term "capital assets" in § 117).

property must exceed specified percentages of the decedent's gross estate and adjusted estate; the property must devolve to a "qualified heir," who must be a member of the decedent's family; and the decedent or a member of the decedent's family must have been materially participating in the operation of the farm or business at the time of the decedent's death and for five of the eight years preceding his death.[11]

Although not as initial eligibility requirements, the Code imposes two continuing conditions if the estate is to avoid subsequent recapture of the tax savings produced by special use valuation: The property's ownership must remain in the family and must be used for the qualified use for at least ten years following the decedent's death.[12] The qualified successors must agree contractually, at the time that the special use valuation election is made, to keep the property in the family and to operate it for the qualified use for the specified period.[13] That contract must be executed and filed with the estate tax return; and to ensure the Commissioner's ability to accomplish recapture if necessary, the heirs must bind themselves therein to be responsible personally for

---

[11] Whalen v. United States, 826 F.2d 668, 669 (7th Cir. 1987); Schuneman v. United States, 783 F.2d 694, 697 (7th Cir. 1986).

[12] I.R.C. § 2032A(c).

[13] I.R.C. § 2032A(c) and (d)(2). See, e.g., McAlpine, 968 F.2d at 460 (noting that heirs must continue to use property as family farm or business for ten year period to avoid recapture of tax savings); Bartlett v. Commissioner, 937 F.2d 316, 320 (7th Cir. 1991) (same); Prussner v. United States, 896 F.2d 218, 221 (7th Cir. 1990) (discussing requirement that recapture agreement must be filed for valid election).

additional tax in the event of premature disposition of the property or cessation of qualified use. This contract, which must be enforceable by the Commissioner under state law, is generally referred to as a "Recapture Agreement."

The benefits of § 2032A do not appertain automatically just because all prerequisites happen to coalesce: The estate must act affirmatively to elect such treatment. Important to the instant case are the mechanics of electing special use valuation, principal among which are (1) checking the appropriate box or blank on the estate tax return and completing Schedule N, thereby evidencing the intention to make such an election, (2) completing and attaching to the return a Notice of Election containing the information specified in § 2032A and the applicable Regs.,[14] and (3) as just discussed, attaching a Recapture Agreement that has been signed by all parties with interests in the property to be specially valued, expressly consenting to the imposition of the additional tax and to be personally liable to pay it in the event of a premature disposition of the property or cessation of its qualified use.[15] Thus a Notice of Election and a Recapture Agreement, validly and completely executed and filed contemporaneously with the estate tax return, are essential prerequisites if an estate that elects special use valuation is to be in full compliance with § 2032A. Not even the Executors contend that the Estate was in full

---

[14] I.R.C. § 2032A(d)(1); Treas. Reg. § 20.2032A-8(a)(3).

[15] I.R.C. § 2032A(a)(1)(B) and (d); Treas. Reg. § 20.2032A-8(a)(3) and (c).

10

compliance when the 706 was filed; thus the need to determine if the Estate was in substantial compliance.

## Recapture Agreement

The 706 was not accompanied by any instrument labeled or purporting to be a Recapture Agreement. Yet § 2032A(b)(1)(B) of the Code makes abundantly clear that the Recapture Agreement, i.e., "the agreement described in subsection (d)(2)" is an integral and indispensable element of a special use valuation election. The legislative history of § 2032A confirms the essential nature of the Recapture Agreement:

> One of the requirements for making a valid election is the filing with the estate tax return [of] a written [recapture] agreement signed by each person in being who has an interest in any qualified real property with respect to which the special use valuation is elected. The [recapture] agreement must evidence the consent of each of those parties to the application of the recapture tax provisions to the property.[16]

That the filing of a valid Recapture Agreement is indispensable has also been recognized by the courts and in the Regs.[17]

The contents required for a valid Recapture Agreement are specified in § 2032A(d)(2):

> The agreement referred to in this paragraph is a written agreement signed by each person in being who has an interest (whether or not in possession) in any property designated in such

---

[16]  H. R. Conf. Rep. No. 94-1380, 94th Cong., 2d Sess. 27 (1976).

[17]  See Bartlett, 937 F.2d at 320; Prussner, 896 F.2d at 222; McDonald v. Commissioner, 853 F.2d 1494, 1495 (8th Cir. 1988), cert. denied sub nom. Cornelius v. Commissioner, 490 U.S. 1005 (1989); Treas. Reg. §§ 20.2032A-8(a)(3) and (c)(1).

11

> agreement consenting to the application of subsection (c) [imposition of the additional estate tax] with respect to such property.[18]

By making the heirs personally responsible for any additional tax, which is triggered either by a disposition of the property or cessation of its qualified use within the statutory period, the Recapture Agreement provides considerable assurance to the Commissioner of collectibility. Treas. Reg. § 20.2032A-8(c) sets forth the required contents of the Recapture Agreement in greater detail than does the Code. Indeed, a model form of such an agreement is available for those who care to avail themselves of it.[19] Among other things, the Recapture Agreement (1) must express the consent of the heirs to be liable personally under Code § 2032A(c) in the event of early disposition of the property or early cessation of qualified use; (2) must be binding under local law on all parties with an interest in the property; and (3) must designate an agent for the parties and endow such agent with authority to act for all parties to the agreement in dealing with the IRS.[20]

In addition to the _in personam_ security obtained by the Commissioner through the Recapture Agreement, _in rem_ security is garnered through the provisions of § 6324B of the Code, which create a statutory lien on the subject property. This lien attaches automatically at the time an election is filed under

---

[18] I.R.C. § 2032A(d)(2).

[19] Rev. Proc. 81-14, 1981-1 C.B. 669.

[20] Treas. Reg. § 20.2032A-8(c).

§ 2032A, regardless of the enforceability or timeliness of filing the Recapture Agreement.[21]

Obviously, the comprehensive statutory and regulatory scheme just described envisions the combination of in personam of the heirs and in rem responsibility of the property, not merely as security for the collection of additional taxes but also to constrain at least ten years of qualified ownership and qualified use of the property. Personal liability of the heirs enhances the likelihood that the property will be kept in the family and used for qualified purposes, and that the Commissioner would be able to recover the defaulted tax benefit if, by the time recapture is triggered, the value of the property shall have so declined that the § 6324B lien is then wholly or partially worthless. It is beyond the authority of the courts, then, to say that alone the lien would suffice: The heirs' agreement to be personally liable for the tax consequences is equally indispensable, for "without the heirs' signatures, the election on the original return may not effectively bind the heirs."[22]

### Notice of Election

The Notice of Election is the other document that must accompany a timely filed estate tax return in which a special use valuation election is made. Unlike the Recapture Agreement, which here was omitted entirely, a Notice of Election did accompany

---

[21] I.R.C.§ 6324B; McAlpine, 968 F.2d at 464.

[22] McDonald v. Commissioner, 89 T.C. 293, 305 n. 31 (1987), aff'd in part and rev'd in part, 853 F.2d 1494 (8th Cir.), cert. denied sub nom. Cornelius v. Commissioner, 490 U.S. 1005 (1989).

Decedent's 706. All concede, however, that several of the required contents of and attachments to this document were missing SQfive out of fourteen, to be more precise.

Schedule N of the estate tax returnSQyet another document required to be completed and included in connection with a special use valuation electionSQcontains instructions which provide, inter alia, that the return preparer must complete and attach the Notice of Election. Those instructions are derived from Reg. § 20.2032A-8(a)(3), which lists the fourteen specific items required for a valid Notice of Election. The five items omitted from the instant Notice of Election are: (1) information supporting the special use values listed in the return, (2) written appraisals of the fair market values of the properties, (3) the name, address, taxpayer identification number, and relationship to the Decedent of each person succeeding to an interest in the subject properties, (4) value of the property interests being received by each such successor, based on both fair market value and qualified use, and (5) affidavits setting forth the activities constituting material participation and identity of the participants in the qualified use of the properties.

The Estate's Notice of Election was also deficient in regard to the requirement that the signatures of all successors be affixed: As noted earlier, only three of the five grandsons signed the Notice; one did not sign by virtue of military service and another simply did not sign, the Estate offering no explanation other than that he was "not presently available." As a matter of

14

law, the Estate's cryptic, conclusionary statement on its Notice of Election that "All requirements exist for special valuation of qualified real property" adds nothing to the substantialitySOor lack thereofSOof the Estate's compliance with the requirements for making a valid election. Neither does Mr. Keith's signed statement that he would undertake to obtain the missing signatures, particularly given the fact that neither of the missing signatures nor any of the other items missing from the Notice of Election were submitted to the IRS between the time that the return was filed and the time that the notice of deficiency disallowing special use valuation was sent by the IRS and received by the Estate.

The record does not reflect the reason or reasons for the Estate's omissions of so many of the substantive requirements[23] for a complete Notice of Election. Beyond the statement "explaining" the missing signatures, the Estate offers nothing to justify the omission of appraisals, affidavits, and other supporting documentation in addition to the omitted Recapture Agreement; neither does the Estate explain why nothing was done to supply the missing pieces of the puzzle, as promised, until after the notice of disallowance was received from the IRS. Whatever the explanation for the omissions might be, it matters not; we deal only with the facts directly affecting less-than-full compliance with the election requirements, not with the excuses therefor, particularly when, as here, none have been proffered except as to

---

[23] We respectfully but firmly disagree with the Tax Court's characterization of these omissions as "technicalities."

15

the signature of the grandson who was serving in the military at the timeSQfor whatever that might be worth.

Substantial Compliance

It is undisputed that here the Notice of Election filed with the 706 was incomplete, both as to content and signature, and that no separate Recapture Agreement was filed with the 706.  Clearly, then, the Estate did not initially comply _fully_ with the requirements for electing special use valuation.  As there was no _full_ compliance, then, whatever compliance was made must be found to have been "substantial" under the applicable Regs. when the 706 was filed if the Estate is to be held entitled to perfect its defective election.[24]  This case thus turns on the issue of _substantial_ compliance.

We have noted that when Congress adopted § 2032(A) as part of the Tax Reform Act of 1976, it provided a special dispensation or act of grace to a defined class of heirs and legatees who gratuitously acquire family farms and some other closely-held businesses under specified conditions and circumstances.  In a further act of grace Congress added subsection (d)(3) to Code § 2032(A) (effective retroactively to estates of decedents dying after December 31, 1976) when it adopted the Deficit Reduction Act (DEFRA) in 1984.[25]  Labeled "Modification of Election and Agreement to be Permitted," subsection (d)(3) requires the Secretary of the

---

[24]  I.R.C. § 2032A(d)(3).

[25]  Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 1025(a), 98 Stat. 494 (1984).

16

Treasury to promulgate procedures that would allow executors and administrators a reasonable timeSQnot to exceed ninety daysSQto bring flawed special use valuation elections into full compliance <u>if</u> a timely election has been made and <u>if</u> it

> substantially complies with the regulations prescribed by the Secretary with respect to such election, butSQ
>
> (i) the notice of election, as filed, does not contain all required information, or
> (ii) signatures of 1 or more persons required to enter into the [recapture] agreement . . . . are not included on the agreement as filed, or the agreement does not contain all required information [.][26]

As thus modified, the Code section itself, at least by strong implication, requires that a Notice of Election and a Recapture Agreement signed by at least one of the parties acquiring an interest in the property must have been filed with the estate tax return, and that a considerable amount of the required information must have been included in or with those instruments.

"Substantial compliance" is not a defined term in § 2032A; indeed, defining that term with precision would be a tall order for the legislative draftsmen.  We are, however, the beneficiaries of some congressional guidance in the relevant legislative history that accompanied DEFRA, reflecting the sense of Congress that any permissible deficiencies in compliance with the requirements of a valid election had to be <u>minor</u>:

> The conferees wish to reiterate that, as under the Senate amendment, perfection of notices of election and of [recapture] agreements to

---

[26]  I.R.C. § 2032(A)(d)(3).

current use valuation elections is to be permitted only in cases where the estate tax return, as filed, evidences substantial compliance with the requirements of the Treasury Regulations. For example, merely checking the applicable box on the federal estate tax return that an election is being made is not sufficient action by the estate to secure the benefits of the current use valuation provision. <u>Both a notice of election and [a recapture] agreement that themselves evidence substantial compliance with the requirements of the Regulations must be included with the estate tax return, as filed, if the estate is to be permitted to perfect its election.</u>[27]

That same conference report goes on to explain by example just how minor the deficiencies must be to permit subsequent correction:

Illustrations of the type of information that may be supplied after the initial filing of the notice of election are omitted Social Security numbers and addresses of qualified heirs and copies of written appraisals of the property to be specially valued . . . . <u>To be eligible for perfection, the [recapture] agreement as originally filed must at a minimum be valid under state law and must include the signatures of all parties having a present interest or a remainder interest other than an interest having a relatively small value.</u> The right to perfect agreements is intended to be limited to cases where, for example, a parent of a minor remainderman, rather than a <u>guardian ad litem</u> as required under State law, signs the agreement. Similarly, failure to designate an agent in the agreement as filed may be corrected under this provision.[28]

The significance of the quoted language, expressing the intent of Congress to allow correction only for such hypertechnical

---

[27]   H.R. Conf. Rep. No. 98-861, 98 Cong., 2d Sess. 1240-41 (1984). (emphasis added).

[28]   <u>Id.</u> at 1241 (emphasis added).

glitches as the signing of the Recapture Agreement for a minor by a parent when a guardian ad litem was required, is discussed below when we address the "common sense" approach that we advocated under similar circumstances in McAlpine v. Commissioner.[29]  More significant to the present discussion, however, is the emphasized portion of the foregoing quotation, explaining what is required if a Recapture Agreement is to be susceptible of perfection under the substantial compliance rubric:  (1) validity and enforceability under state law, and (2) signatures of all parties with a present or remainder interest other than those of relatively small value. Implicit beyond cavil is the obvious requirement that the original, timely filed estate tax return in which the election is made must be accompanied by an instrumentSQany instrument, regardless of labelSQthat constitutes an enforceable contract under state law, executed by those successors in interest who must be bound.

Demonstrating an admirable but unavailing bit of ingenuity, counsel for the Estate would have us deem the agglomeration of (1) a few designated provisions of the Will, (2) the incomplete Notice of Election, and (3) his proffered interpretation of Texas law, to be the legal equivalent of a Recapture Agreement sufficient for purposes of substantial compliance.  We must, however, reject out of hand that specious bit of legal legerdemain.  Neither in form nor in substance, singly or in combination with the Will and the Estate's (and the Tax Court's) version of the Texas law of descent and distribution, can the instant Notice of Election be

_____

[29]  968 F.2d 459 (5th Cir. 1992).

19

stretched to constitute an "agreement . . . valid under state law . . . ." And if that were not enough, the Notice of Election, which was filed with the 706, does not even bear the signatures of "all parties having a present interest or remainder interest . . . "SQa requirement for a Recapture Agreement to be eligible for post hoc perfection. Assuming, arguendo, that the absence of the signature of the grandson who was in military service were excused, there still remains the unexcused omission of the signature of another of the five grandsons.

Even if we could agree with the Tax Court's overly generous characterization of the subject omissions as "technicalities," we perceive them to be far more substantial than the "slightest technicality" referred to by Senator Dixon of Illinois,[30] which he illustrated with two hypothetical examples: One featured a mother who signed a Recapture Agreement for her minor children without first having been appointed their guardian by a court; the second featured a Recapture Agreement that had been signed by the mother of a newly born infant but had not been signed by a duly appointed legal guardian for that infantSQwho also had an interest in the propertySQfor the simple reason that the executors were unaware of the birth of that child. These were examples of defects that Senator Dixon characterized as the kind of "simple technical flaws" that should not destroy the election.[31] Similar explanations and examples of "technical" defects were provided by the staff of the

---

[30] 130 Cong. Rec. S8,700 (1984).

[31] Id.

20

Joint Committee on Taxation.[32]

Presupposed in the legislative history of § 2032A(d)(3) was the timely filing of some agreement, binding under state law, actually signed by or on behalf of all parties at interest (albeit possibly by someone without technically sufficient credentials), purporting to bind those parties personally to liability for additional tax in the event of the occurrence of a disqualifying event. In stark contrast, the only supporting document (other than the Schedule N which was filed by the Estate with the 706) was the Notice of Election, itself signed by only sixty percent in number of the qualified heirs, lacking significantly in required (although possibly curable) contents, but in no way implicating recapture and in no way constituting a contract enforceable under state law.

In addition to the legislative history and the plain wording of the Code and the Regs., the applicable jurisprudence strongly supports the Commissioner's position while furnishing no justifiable comfort to the Estate. We find three federal appellate decisions especially instructive.

In the first of these, McDonald v. Commissioner,[33] a widow's state law disclaimers of farm land, one relating back to her husband's death and another relating to property that would pass to her children if she were to have predeceased her husband, made her

---

[32] See Staff of Joint Comm. on Taxation, 98th Cong., 2d Sess., General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 1123-25. (Jt. Comm. Print 1984).

[33] 853 F.2d 1494 (8th Cir. 1988), cert. denied sub nom. Cornelius v. Commissioner, 490 U.S. 1005 (1989).

children's participation in the election necessary as a matter of law. But in the Notice of Election and the Recapture AgreementSQ both filed timely with the Estate Tax ReturnSQthe widow was erroneously identified as being the sole heir; and she alone signed as such. Thus, despite the timely filed and properly executed estate tax return, and despite the accompaniment of an otherwise complete and legally sufficient Notice of Election and a similarly qualified Recapture Agreement, the election was flawed by the omission of the names and signatures of the widow's children. Under circumstances considerably less blatant than those we consider today, the attempt of the estate in McDonald to cure its defective election under a claim of substantial compliance was disallowed by the Eighth Circuit which held that, under the statutory language, signatures could not subsequently be added to an agreement that did not already bind "all parties taking an interest in the property."[34] The McDonald court, relying on the language of the statute as well as the above noted legislative history, found no substantial compliance, as neither the name nor the signature of anyone with an interest in the property, was affixed. The court concluded that "[t]he omission from the recapture agreement of the signatures of all persons with an interest in the property is not the type of slight technicality envisioned by Congress when the 1984 amendment was enacted."[35] We are satisfied that the Eighth Circuit would have needed even less

---

[34] Id. at 1497-98.

[35] Id. at 1498.

22

time and fewer words to reach that conclusion under the facts before us today:  In McDonald, there was at least an otherwise complete and timely filed Recapture Agreement that the court nevertheless found to be ineligible for retroactive perfection because none of the persons with an interest in the property had signed it.  Here, no Recapture Agreement (or any combination of instruments and legal principles that could, by any stretch, be deemed to suffice for a Recapture Agreement) was filed contemporaneously with the 706 in which the election was made.[36]

The second special use valuation "substantial compliance" case of recent vintage that we find instructive is our own McAlpine v. Commissioner.[37]  The Estate urges us to apply the kind of "common sense" flexibility here that we enunciated in McAlpine.[38]  Although that "dog won't hunt" under the instant circumstances, which are so distinguishable from those in McAlpine that they constitute a material difference and are thus inapposite, McAlpine presents a

_____

[36]  This is not mere speculation on our part:  Shortly after deciding McDonald, the Eight Circuit decided Foss v. United States, 865 F.2d 178 (8th Cir. 1989) and considered a situation almost identical to that before us:  The estate tax return reflected a special use valuation election but was filed without either a recapture agreement or a notice of election.  In denying the estate the right to correct these deficiencies under the "substantial compliance" provisions of I.R.C. § 2032A(d)(3), the Foss court concluded that there was no eligibility for perfection when "nothing was filed with the return containing the substance of the recapture agreement or the principal beneficiary's consent to be personally liable for the recapture tax."  Id. at 181.

[37]  968 F.2d 459 (5th Cir. 1992).

[38]  See id. at 464 ("We must give the statute a common sense interpretation, with an eye towards protecting the family farm and business as Congress intended.") (citing Estate of Thompson v. Commissioner, 864 F.2d 1128, 1134 (4th Cir. 1989)).

23

case of life imitating art, in the incarnation of one of the hypothetical illustrations described by Senator Dixon in the legislative history of subsection (d)(3). The testator in <u>McAlpine</u> bequeathed all of his interest in the eligible property to three separate trusts, one for the benefit of each of three grandchildren, one of whom was a minor. The mother of those grandchildren was the trustee, and in each trust she was vested with the discretionary power to distribute both income and principal. In making a timely special use valuation election, the return preparer dutifully attached a Recapture Agreement which was binding under state law but was signed only by the beneficiaries' mother as trustee. The Commissioner asserted the legal positionSQlater proved to be correctSQthat the two major beneficiaries and a court-appointed representative of the minor beneficiary, not the mother as trustee, should have signed the Recapture Agreement. Within ninety days following notice of these defects, an amended Recapture Agreement was filed, signed by the two major trust beneficiaries and by the minor beneficiary's motherSQnot as trustee this time but as the minor's duly appointed guardian ad litem.

In rejecting the Commissioner's continued disallowance of the election after it was timely perfected, we factually and legally distinguished the <u>McAlpine</u> situation from the facts considered in prior jurisprudence in which compliance was not found to be substantial because the timely filed Recapture Agreements had not been signed by the right persons. In those earlier cases the

courts had reasoned that, as the taxpayers "did not have reasonable, good faith arguments that the regulations did not require what was omitted, their compliance with the Regs. was not substantial and thus could not be perfected."[39]  In contrast, we concluded that under the trust situation of McAlpine the law was less than pellucid that the major beneficiaries and the legally appointed representative of the minor beneficiarySQrather than the trusteeSQwere the parties who were required to sign the Recapture Agreement.  We emphasized that the Regs. mentioned "trustees" when referring to persons with interests in the property who were required to sign, but did not mention trust beneficiaries.  We recognized the existence of a good faith argument under state law that the signatures of beneficiaries were not required and that the signature of the trustee alone would be sufficient.  Even though we held that the legal misunderstanding in McAlpine presented a reasonable basis for permitting perfection under the substantial compliance exception, we cautioned that we were also relying on the absence of "evidence of fraud or dilatory or slipshod preparation of the necessary documentation."[40]

We clearly viewed the McAlpine facts as presenting a close call, yet the facts we analyzed under the good faith or "common sense" approach there were much more favorable to the taxpayer than

---

[39]  Id. (distinguishing Prussner v. United States, 896 F.2d 218 (7th Cir. 1990), McDonald v. Commissioner, 853 F.2d 1494 (8th Cir. 1988), Estate of Doherty v. Commissioner, 95 T.C. 446 (1990) rev'd by 982 F.2d 450 (10th Cir. 1992), and Estate of Strickland v. Commissioner, 92 T.C. 16 (1989)).

[40]  Id.

those now before us:  The <u>McAlpine</u> Recapture Agreement was timely filed as an attachment to the estate tax return; classic per se fiduciary relationships were involved; a party with legal authority over all qualified property executed the Recapture Agreement, thereby both assuming personal liability and signing de facto for the beneficial owners of the property; and a serious, good faith legal disagreement existed as to the identity of the party or parties who were required to sign the Recapture Agreement.  When those characteristics are compared to the facts of instant case, the distinguishing differences are obvious.  Indeed, <u>McAlpine</u>'s "common sense" approach to <u>statutory</u> interpretation (not to factual analysis) cuts against rather than in favor of a conclusion of substantial compliance in the instant case.  Furthermore, even though there is not the first hint of fraud or intentional delay here, the same cannot be said about "slipshod preparation of the necessary documentation."  Far from substantial compliance, the documentation supporting the election in the instant case was at most <u>a lick and a promise</u>; and even the "promise" remained unfulfilled until after the Estate's hand was called by the IRS's deficiency notice disallowing the election.

The third opinion we find persuasive was rendered by our colleagues on the Seventh Circuit, sitting en banc.  It provides perhaps the best analysis of the instant problem under facts closely analogous to those we are now considering.  In <u>Prussner v. United States</u>,[41] post hoc perfection of a defective special use

_____

[41]  896 F.2d 218 (7th Cir. 1990) (<u>en</u> <u>banc</u>).

valuation election was sought under the "substantial compliance" provisions of § 2032A(d)(3). A duly executed estate tax return had been timely filed; it was accompanied by a Notice of Election but, as here, was devoid of a Recapture Agreement. Not unlike the statement affixed to the Hudgins' 706 by Mr. Keith, a cover letter accompanying the estate tax return in Prussner advised that a Recapture Agreement would be submitted subsequently when signed by the geographically scattered heirs. Unlike the "promise" in the case sub judice, the Prussner promise was fulfilled a mere four months later by the supplemental filing of a fully executed, legally binding Recapture Agreement before the estate tax return was ever audited. Construing the facts liberally in favor of the taxpayer, the trial court treated the cover letter as a Recapture Agreement, a holding reversed on appeal when the en banc Seventh Circuit determined that the estate was ineligible for post-filing perfection, irrespective of the cover letter. The Prussner court treated the date of filing the timely estate tax return as the "deadline" for filing a Schedule N, a Notice of Election, and a Recapture Agreement, observing that courts have no authority to vary deadlines fixed by Congress or by agencies exercising delegated legislative powers.[42] The court cautioned against expansive, loose treatment of substantial compliance in the context of § 2032A. After noting that little comfort or guidance could be gained from prior Tax Court decisions on the subject of substantial compliance, the Seventh Circuit admonished that:

---

[42] Id. at 223.

27

> The common law doctrine of substantial compliance should not be allowed to spread beyond cases in which the taxpayer had a good excuse (though not a legal justification) for failing to comply with either an unimportant requirement or one unclearly or confusingly stated in the regulations or the statute. So conceived the doctrine is broader in scope, but less forgiving, than section 2032A(d)(3). It is not limited to the specific requirements made curable by subsection (B)(i) and (B)(ii), but there must be a showing that the requirement is either unimportant or unclearly or confusingly stated; no such showing is required by those subsections . . . .
>
> In this case a regulation the validity of which is not challenged unequivocally required the filing of a recapture agreement <u>with</u> the return. The taxpayer's lawyer made no effort to comply, and given his alternative remedies SQmost simply, a request for an extension of time in which to file the returnSQhe had no excuse for the failure . . . . <u>The Internal Revenue Service cannot allow qualified-use valuation until a recapture agreement is filed because . . . the statute makes the filing of such an agreement a condition of a valid election</u>. Until it is filed, the return is in limbo. Failure to comply with the regulations may also create confusion about the irrevocability of the election. "Such an election, once made, shall be irrevocable." 26 U.S.C. § 2032A(d)(1). When is it made, if no recapture agreement is filed?[43]

We discern an obvious lesson from <u>McDonald</u>, <u>Prussner</u> and <u>McAlpine</u>. During the decade since subsection (d)(3) was added to § 2032A by DEFRA, in not one case in which no Recapture Agreement (or other contractually sufficient substitute, personally binding the qualified heirs and enforceable under state law) had been submitted contemporaneously with the estate tax return has substantial compliance been found and post-filing perfection

---

[43] <u>Id.</u> at 224-25. (emphasis added).

28

permitted. At least no such case has been cited to us by the parties and we have found none independently. Consistent with that history, we hold today that a special use valuation election can never be in substantial compliance with the requirements of § 2032A if the estate tax return in which the election is made is not accompanied by a Recapture Agreement or some reasonable facsimile thereof, signed by the holders of all interests (other than de minimis) in the qualified assets, and personally binding the interest holders under state law to be liable for tax deficiencies in the event of disqualifying use or disposition of the property during the statutory period.

C.    The Tax Court Opinion

The Tax Court, in its "speaking opinion" from the bench, may well have had in mind our admonition in McAlpine that "[w]e must give the statute a common sense interpretation, with an eye towards protecting the family farm and business as Congress intended."[44] If so, the court read that admonition far too expansively. For whether we here review the Tax Court's handling of the substantial compliance issue de novo as an issue of law or for clear error as a question of fact, we are "left with a firm and definite conviction that a mistake has been committed."[45] The Tax Court's approach may best be analogized to a bankruptcy court's fashioning

_____

[44]    McAlpine, 968 F.2d at 464 (citing Estate of Thompson v. Commissioner, 864 F.2d 1128, 1134 (4th Cir. 1989)).

[45]    Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co, 333 U.S. 364, 395 (1948)).

unauthorized remedies under the banner of equity.[46] Confronted here with a McAlpine-proscribed "slipshod preparation of the necessary documentation," the Tax Court faced what we have now demonstrated to have been an impossible task if it were to find substantial compliance despite the total absence of a Recapture Agreement. For, as recognized by consistent jurisprudence, failure timely to file a Recapture Agreement bars a finding of substantial compliance. That bar looms even more impenetrable here in light of the Estate's additional omissions of such proportion as appraisals of the property and substantiation of the method used for determining special value based on qualified use.[47]

Neither can the Tax Court's holding be sustained by its reliance on those portions of the Will to which that court adverts. The Tax Court's conclusion that particular Will provisions "provide adequate assurances" to the Commissioner is simply wrong. Indeed, they provide the Commissioner no legal assurance whatsoever. In the total absence of a Recapture Agreement and in the face of an otherwise substantially defective election, we can conceive of no way for the Will to afford the Commissioner the ability to recover from the heirs personally in the event of a breach. Equally unavailing is the Tax Court's expressed but unsupported,

_____

[46] See, e.g., Matter of Oxford Management, Inc., 4 F.3d 1329, 1334 (5th Cir. 1993) ("The `statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'") (quoting United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986)).

[47] See Estate of Strickland v. Commissioner, 92 T.C. 16, 28 (1989).

conclusional "belief" that:

> Texas law would recognize the testator's intent in that regard [non-alienation and affirmative ranch use for ten years] and hold and bind the beneficiaries to those provisions . . . and on the totality of the evidence in this case, establishes effectively a constructive agreement and legally binding commitment among the beneficiaries that they will comply with the requirements of the special-use valuation statutes . . . .

We are not convinced; and neither the Estate nor the Tax Court has cited us to Texas authority in support of such a proposition.

III

CONCLUSION

We follow constant jurisprudence, as reflected by the decisions of every court that has directly addressed the issue, in holding that there can be no substantial compliance with the requirements of Code § 2032A without, inter alia, the contemporaneous filing of a Recapture Agreement or its equivalent.[48] Thus we hold that the Tax Court reversibly erred in finding that the Estate's special use value election was in substantial compliance with the requirements of the Code and the Regs. and allowing perfection of the flawed election. We therefore reverse the Tax Court and remand this case to it for the limited purpose of entering a judgment in favor of the Commissioner, rejecting the Estate's petition for redetermination, and reinstating the deficiency assessed by the Commissioner, modified to any extent

---

[48] We do not imply that there must be a separate, free-standing contract, labeled "Recapture Agreement"; indeed, we can envision inter alia a single instrument serving as both the Notice of Election and the Recapture Agreement, as long as the substantive contents and legal requirements for both are present.

necessary to reflect precisely the correct values and the appropriate estate taxes and interest due.

REVERSED and REMANDED.